**SHUB & JOHNS LLC**
Jonathan Shub
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (917) 775-8862
jbm@wittelslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE MULLANEY and ROBERT MULLANEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HOP ENERGY, LLC, <br><br> Defendant. | Civil Case No.: 7:23 Civ. 7318 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Michelle Mullaney and Robert Mullaney (hereinafter "Plaintiffs"), by their attorneys Shub & Johns LLC and Wittels McInturff Palikovic, bring this consumer protection lawsuit in their individual capacities, and on behalf of a class defined below (the "Class"), against Defendant HOP ENERGY, LLC ("HOP Energy") and hereby allege the following with knowledge as to their own acts, and upon information and belief as to all other acts:

## NATURE OF THE CASE

1.      Defendant HOP Energy provides heating oil to consumers in eight states across the Northeast.[1] This consumer protection action arises from HOP Energy's breach of contract and bad faith pricing practices, causing tens of thousands of consumers to pay considerably more than they bargained for to obtain home heating oil.

2.      Price is the most important consideration for heating oil consumers.  Given that there is no difference at all in the heating oil that HOP Energy supplies as opposed to that supplied by other heating oil companies, the only reason a consumer chooses a particular heating oil company over another is for the potential savings offered in a competitive market.

3.      As set forth herein, HOP Energy contracted with Plaintiffs and the Class to sell its heating oil at "our prevailing retail price for home heating oil that is in effect at the time of delivery."  As described in Plaintiffs' contract with HOP Energy, Plaintiffs initially enrolled in Defendant's "Capped Price Program" for a 12-month "Pricing Period," after which Plaintiffs would be automatically defaulted onto Defendant's "Variable Price Plan" and be charged "our prevailing retail price for home heating oil that is in effect at the time of delivery."  As also detailed below, before filing this action Plaintiffs commissioned an initial yet detailed analysis from a top-tier energy consulting expert regarding the prevailing retail price HOP Energy should have charged Plaintiffs.

4.      This analysis (described below) demonstrates that HOP Energy's rates categorically failed to reflect the "prevailing retail price for home heating oil that is in effect at the time of delivery."  Because the facts do and will continue to demonstrate that Defendant took

---

[1] According to HOP Energy's website, its family of energy brands provide services to customers in the following eight states: Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont.  *See* https://hopenergy.com/locations/ (last accessed August 17, 2023).

advantage of consumers' lack of sophistication, inertia, and other well-studied frailties in consumer-decision making, HOP Energy breached both the clear language of its customer contract and the implied covenant of good faith and fair dealing.

5.    Plaintiffs and the Class of HOP Energy's heating oil customers defined below have been injured by Defendant's unlawful practices.  Plaintiffs and the Class therefore seek damages and restitution for HOP Energy's breach of contract and breach of the duty of good faith and fair dealing.  Heating costs are a significant portion of most families' budgets.  To prey on consumers as Defendant has done here is unconscionable.

6.    Only through a class action can HOP Energy's customers remedy Defendant's ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge HOP Energy's unlawful practices, it is not financially feasible for an individual customer to bring his or her own lawsuit.  Further, many customers do not realize they are victims of HOP Energy's unlawful conduct.  With this class action, Plaintiffs and the Class seek to level the playing field and ensure that companies like HOP Energy engage in fair and upright business practices.

## FACTUAL ALLEGATIONS

7.    On November 7, 2016, Plaintiff Michelle Mullaney signed a home heating oil contract for a "Capped Price Program" with a HOP Energy brand called The Oil Express.[2]  The contract is a non-negotiable standardized form contract drafted by HOP Energy and is attached hereto as **Exhibit A**.

---

[2] According to HOP Energy's website, The Oil Express is a "Local Hop Energy Branch[.]"  *See* https://www.hopenergy.com/locations/oil-express/ (last accessed August 17, 2023).

3

8.      The contract defines itself as the "Agreement." *Id.* at 1.  Under the Agreement, Plaintiffs' home heating oil price was capped for the earlier of delivery of 800 gallons of oil or until November 30, 2017.  *Id.*  The Agreement defines the "period from 11/07/2016 through 11/30/2017" as the "Pricing Period." *Id.*  The contract states that the capped price "will expire at the earlier of the end of the Pricing Period or when all of the Agreement gallons stated above [i.e. 800 gallons] are delivered to you, without further notification to you[.]" *Id.*  Once the capped price period ends, on either November 30, 2017, or upon delivery of the maximum amount of oil, "subsequent deliveries to you will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery." *Id.*

9.      The "DELIVERIES" section of the Agreement makes clear that "[h]eating oil deliveries will be made to you on an automatic delivery basis" and that the customer must "maintain your account on automatic delivery[.]" *Id.*

10.     The "TERMINATION" section of the Agreement provides that the Agreement's terms continue past the "Pricing Period." *Id.* at 2.  The "TERMINATION" section states that "[a]fter the Pricing Period, either party may terminate this Agreement upon written notice, provided that you will remain responsible for all purchases made by you before we receive notice of the cancellation." *Id.*  The "TERMINATION" section then provides that "[a]ny gallons delivered to you after the Pricing Period has expired will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery." *Id.*

11.     Notably, unlike the "Capped Price Program" which is explicitly defined, nowhere in the Agreement is there any definition of what constitutes Defendant's "prevailing retail price for home heating oil that is in effect at the time of delivery."

12.     The Agreement also includes two copies of a "**NOTICE OF CANCELLATION**" that can be used to terminate the Agreement.  *Id.* at 3–4 (emphasis in original).

13.     Finally, the Agreement contains a $200 early termination fee if a consumer's "account is cancelled or terminated . . . during the Pricing Period[.]"  *Id.* at. 2.

14.     Before Plaintiffs signed the Agreement, HOP Energy mailed Plaintiffs an advertisement stating that Variable Price Plan prices "[f]loat with the market[.]"   This advertisement is attached hereto as **Exhibit B**.

15.     On November 10, 2017, HOP Energy mailed Plaintiffs a letter advising them that "[a]s of 11/30/2017" the Pricing Period would end and that "if we don't hear from you, your account will automatically default to the Variable Price Plan and you will remain on automatic delivery."  The letter described that under the Variable Price Plan, "our prevailing retail price fluctuates as the cost of oil changes."  This letter is attached hereto as **Exhibit C** and does not contain the word "cancel."

16.     Plaintiffs took no action and in accordance with the Agreement, and HOP Energy continued to deliver their home heating oil until they canceled their contract with HOP Energy in February 2018.

17.     Following Plaintiffs' October 2017 home heating oil delivery, Defendant automatically enrolled Plaintiffs into the Variable Price Plan.

18.     As detailed below, the variable rates HOP Energy charged Plaintiffs after the expiration of the Capped Price Program were set in bad faith and do not reflect prevailing retail prices.

19.     Before bringing this action, Plaintiffs and their counsel commissioned an analysis from a top-tier energy consulting expert regarding the prevailing retail prices for heating oil in

Massachusetts, Plaintiffs' home state. This analysis demonstrates that in the four months that Plaintiffs remained HOP Energy customers after the expiration of the Capped Price Program, the per-gallon rates HOP Energy charged were higher than the prevailing retail price ***100%*** of the time. In fact, HOP Energy's prices were ***on average*** 21% higher than the prevailing retail rate charged for ***the exact same heating oil***.

20.     To arrive at these findings, Plaintiffs' consulting expert obtained weekly residential heating oil price data for Massachusetts for the period between November 2017 and February 2018 published by the United States Energy Information Administration ("EIA").[3]

21.     The EIA also publishes weekly residential heating oil prices for the New England region for the duration of the heating season, which is defined as October through March of each year.[4]

22.     Using the prices published in these two EIA-compiled reports regarding prevailing retail heating oil prices in Massachusetts and the New England region, Plaintiffs' consulting expert compared the HOP Energy heating oil prices reflected in Plaintiffs' invoices to the pricing data reflected in these public reports.

23.     Specifically, the prices listed on Plaintiffs' invoices on specific dates were compared to the average prices reported by the EIA in the week corresponding with the delivery date of HOP Energy's heating oil.

---

[3] Energy Information Administration (EIA), Heating Oil and Propane Update. Available from: https://www.eia.gov/petroleum/heatingoilpropane/ (last accessed August 17, 2023).

[4] Specifically, the residential heating oil price reported by the EIA is the price charged for home delivery of No. 2 heating oil, excluding any discounts such as those for prompt cash payments. Energy Information Administration (EIA), Heating Oil and Propane Update: Definitions, Sources and Explanatory Notes. Available from: https://www.eia.gov/dnav/pet/TblDefs/pet_pri_wfr_tbldef2.asp (last accessed August 17, 2023).

24.     The graph below illustrates the residential heating oil prices that HOP Energy charged Plaintiffs (blue line), as well as those reported and EIA (red line for the state and green line for New England):



25.     This graph demonstrates (1) that the two sources of public pricing data are highly consistent, and (2) that the prices HOP Energy charged Plaintiffs are substantially higher than these two sources and thus do not reflect the "prevailing retail price for home heating oil that is in effect at the time of delivery" as required by HOP Energy's customer contract.  Moreover, while HOP's overcharges are less than a dollar per gallon, the cumulative effect of these overcharges on consumers' budgets (because of the number of gallons purchased) amounts to hundreds, or even thousands of dollars, in overcharges for the exact same heating oil sold at the prevailing retail price.

26.     Table 1 below shines further light on HOP Energy's improper pricing practices. Table 1 compares the price information from Plaintiffs' HOP Energy invoices on specific dates (as shown in Column [a]) and the corresponding public governmental report (*i.e.*, U.S. EIA (Columns [b] and [c])):

| Table 1:  HOP Energy Heating Oil Prices vs. Public Reports (Prices are in $ per gallon) | | | |
|---|---|---|---|
| Date Delivered | HOP Energy Prices | Average Residential Retail Massachusetts (EIA) | Average Residential Retail New England (EIA) |
| | [a] | [b] | [c] |
| 11/24/17 | $3.30 | $2.85 | $2.76 |
| 12/23/17 | $3.70 | $2.89 | $2.83 |
| 1/18/18 | $4.00 | $3.28 | $3.20 |
| 2/13/18 | $3.80 | $3.19 | $3.10 |
| Min | $3.30 | $2.85 | $2.76 |
| Average | $3.70 | $3.05 | $2.97 |
| Max | $4.00 | $3.28 | $3.20 |

27.     Table 1 contains at least three separate indicia of how the heating oil prices HOP Energy charged Plaintiffs were significantly higher than the prevailing weekly prices published by the EIA.

- The average price charged by HOP Energy was $3.70 per gallon, while the average residential heating oil prices were $3.05 per gallon and $2.97 in the EIA reports for Massachusetts and New England respectively.  In other words, while the weekly average prices compiled by EIA varied from one another by

only $0.08, HOP Energy's average price per gallon was between $0.65 and $0.73 _**higher**_ than average prevailing market prices.

- The lowest price HOP Energy charged Plaintiffs was $3.30 per gallon, which was approximately 16% higher than the lowest price reported by the EIA for Massachusetts.

- The highest price charged by HOP Energy during this four-month period was $4.00 per gallon, which was approximately 28% higher than the highest price reported by the EIA for Massachusetts.

28.    Table 2 below summarizes the percentage overcharge from the prevailing retail prices reflected in the public reports to HOP Energy's prices when it sold home heating oil to Plaintiffs after November 23, 2017:

| Table 2:  Percent Overcharge from Public Reports to HOP Energy Heating Oil Prices (Prices are in $ per gallon) | | | |
|---|---|---|---|
| **Date Delivered** | **HOP Energy Prices** | **HOP Energy % Overcharge Above Avg. Residential Retail Massachusetts (EIA)** | **HOP Energy % Overcharge Above Avg. Residential Retail New England (EIA)** |
| | **[a]** | **[b]** | **[c]** |
| 11/24/17 | $3.30 | 16% | 20% |
| 12/23/17 | $3.70 | 28% | 31% |
| 1/18/18 | $4.00 | 22% | 25% |
| 2/13/18 | $3.80 | 19% | 22% |
| Min | $3.30 | 16% | 20% |
| Average | $3.70 | 21% | 25% |
| Max | $4.00 | 28% | 31% |

9

29.    HOP Energy's overcharge percentages in Table 2 above demonstrate the following two additional troubling facts:

- During the winter of 2017/2018, HOP Energy's prices were approximately 16% to 28% higher than the average EIA residential heating oil prices in Massachusetts.  In other words, during the winter of 2017/2018 families in Massachusetts paid HOP Energy a very large premium for the exact same home heating oil sold elsewhere in the state.

- A comparison of HOP Energy's prices to the regional average prices reported by EIA similarly demonstrates how HOP Energy was not charging the "prevailing retail rates" as required by its customer contract.  The prices HOP Energy charged Plaintiffs are on average 20% to 31% higher than the regional residential heating oil prices reported by EIA during the winter months of 2017/2018.

30.    HOP Energy exploits the dramatic information asymmetry between HOP Energy and its customers to engage in improper price gouging.  Consequently, HOP Energy's rates are consistently substantially higher than prevailing retail prices.  In fact, no reasonable customer would interpret "prevailing retail prices" to mean that HOP Energy is contractually permitted to charge 28% or more ***above*** the actual prevailing retail price.  Any reasonable consumer would understand that a contractual commitment to charge "our prevailing retail price for home heating oil that is in effect at the time of delivery," would not authorize HOP Energy to charge on average between 16% and 28% higher than the prevailing retail rate charged for ***the exact same fuel oil***. Instead, a reasonable customer would understand that "our prevailing retail price for home heating

oil that is in effect at the time of delivery," means that HOP Energy's prices will reflect the prevailing retail price in the region.

31.    Further, to the extent the Court finds ambiguous the phrase "our prevailing retail price for home heating oil that is in effect at the time of delivery," the two documents (**Exhibits B and C**) Hop Energy gave Plaintiffs state, respectively, that prices under the Variable Price Plan ""[f]loat with the market" and that "our prevailing retail price fluctuates as the cost of oil changes[.]"  Like the Agreement, these documents tie the contract price to the cost of oil.

32.    A reasonably intelligent person would construe the use of the words "our prevailing retail price for home heating oil that is in effect at the time of delivery" to indicate that HOP Energy's price would not be markedly higher than the prevailing retail price in the region.  A reasonable consumer would believe that the contracted price would be competitive with the market price.  Indeed, neither the Agreement nor the two additional documents HOP gave Plaintiffs specifically note that Defendant's monthly variable rate is subject to any level of discretion.  In fact, none of these documents even contain the word "discretion" or a similar term.  In addition, the Agreement does not even use the word "variable" to describe "our prevailing retail price for home heating oil that is in effect at the time of delivery."

33.    To the extent HOP Energy claims it had discretion to set its heating oil prices, Defendant violated the implied covenant of good faith and fair dealing by exercising any price setting discretion it may have had in bad faith and in a manner inconsistent with Plaintiffs' and other consumers' reasonable expectations.  Reasonable consumers did not expect HOP Energy to use any supposed pricing discretion to profiteer off the information asymmetry between HOP Energy and its customers.  Even if HOP Energy had unilateral discretion to set its heating oil rates (and it did not), Plaintiffs and other reasonable consumers expect that notwithstanding Defendant's

profit goals, its prices would be consistent with prevailing retail prices and that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiffs and other Class Members would not have agreed to buy home heating oil from Defendant.

34.    HOP Energy's improper conduct is designed to take advantage of consumers' good faith and lack of knowledge of the heating oil market. HOP Energy did not honor its contractual commitment to consumers but rather deployed underhanded tactics to maximize its own profits at unsuspecting consumers' expense. For example, a central component of HOP Energy's sales strategy is to use consumer inaction following the expiration of the capped price period to saddle consumers with exorbitant prices.

35.    It is well-established that defaults are powerful drivers of consumer behavior. There are various factors underlying this human tendency that have been discussed in the judgment and decision-making literature, such as the work about defaults, the "status quo bias,"[5] and "nudges."[6]

36.    In this case, HOP Energy knew that once consumers' capped price plans lapsed, it could charge excessive heating oil rates and many (if not most) consumers would not know they were being overcharged, and would simply pay the exorbitant charges, month after month after month.

37.    As a result, HOP Energy is fleecing at least tens of thousands of unsuspecting consumers out of millions of dollars in exorbitant home heating oil costs. Defendant's scheme, which often affects society's most vulnerable citizens, is immoral, unethical, oppressive, and unscrupulous.

---

[5] Daniel Kahneman, Jack L. Knetsch and Richard H. Thaler (1991), "Endowment Effect, Loss Aversion, and Status Quo Bias," *The Journal of Economic Perspectives*, Vol. 5, pp. 193–206.

[6] R. Thaler and S. Sunstein (2008), *Nudge*, Yale University Press.

38.    Plaintiffs are but some of the many consumers harmed by HOP Energy's practices. The purpose of this class action is to obtain redress for all of HOP Energy's customers and to reform HOP Energy's pricing practices going forward.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

39.    This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

### *Personal Jurisdiction*

40.    This Court has specific personal jurisdiction over Defendant because it maintains sufficient contacts in this jurisdiction, including maintaining its principal place of business in this jurisdiction, and advertising, marketing, and selling heating oil in this jurisdiction.  Several additional relevant acts took place in this District.  With its headquarters in this District, HOP Energy processes enrollment transactions and payments in this District; directs marketing, billing, customer outreach, service, and tracking efforts from this District; and received payments from Plaintiffs and Class Members and maintains a bank account in this District.   HOP Energy admits that it has its headquarters in this District, conducts and/or directs certain activities in and/or from this District, received payments from certain of its customers in this District, and maintains a bank account in this District.  *See* Answer ¶ 35, *Melville v. HOP Energy, LLC*, No. 21 Civ. 10406 (KMK) (VR) ("*Melville* Answer").

*Venue*

41.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District and Defendant is headquartered in this District.

## PARTIES

42.    Plaintiff Michelle Mullaney is a resident and citizen of Massachusetts who lived in Wareham, Massachusetts at all relevant times.  Plaintiff Michelle Mullaney was a HOP Energy customer from November 2016 to February 2018.

43.    Plaintiff Robert Mullaney is a resident and citizen of Massachusetts who lived in Wareham, Massachusetts at all relevant times.  Plaintiff Robert Mullaney was a HOP Energy customer from November 2016 to February 2018.  During all relevant periods, Plaintiff Robert Mullaney and Plaintiff Michelle Mullaney have been married and shared the cost of their home heating oil bills.  In addition, HOP's performance was rendered directly to Mr. Mullaney and HOP's contract was executed for his benefit.  Mr. Mullaney also participated in Plaintiffs' decision to switch to HOP Energy.

44.    Defendant HOP Energy, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  Its principal place of business is at 4 West Red Oak Lane, Suite 310, White Plains, NY 10604.  At least one member of Defendant, HOP Energy Holdings, Inc., is a citizen of New York.  HOP Energy admits these allegations. *Melville* Answer ¶ 38.  HOP Energy's website states that it does business in Massachusetts by serving homes and businesses in Cape Cod and Southeastern Massachusetts.

45.    HOP Energy provides residential and commercial heating oil and services to customers in Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode

Island, and Vermont.  HOP Energy admits this allegation.  *Melville* Answer ¶ 39.  HOP Energy

has approximately 100,000 customers. HOP Energy is a sophisticated commercial actor.

## CLASS ACTION ALLEGATIONS

46.    As alleged throughout this Complaint, the Class claims all derive directly from a

single course of conduct by Defendant.  Defendant has engaged in uniform and standardized

conduct toward the Class and this case is about the responsibility of Defendant, at law and in

equity, for its knowledge and conduct.  Defendant's conduct did not meaningfully differ among

individual Class Members in its degree of care or candor, its actions or inactions, or in the content

of its contractual promises and/or improper use of any pricing discretion.  On information and

belief, the form customer agreements for all of HOP Energy's customers are materially the same.

The objective facts on these subjects are the same for all Class Members.

47.    Plaintiffs sue on their own behalf and on behalf of a Class for monetary and

equitable relief under Rules 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

48.    The Class is preliminarily defined as follows:  all HOP Energy customers in

Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and

Vermont (including customers of companies HOP Energy acts as a successor to) who purchased

variable rate heating oil during the longest possible statute of limitations period up to and including

the date of judgment pursuant to contractual pricing terms that set the customer's variable, non-

capped price by reference to HOP's  "prevailing retail price" or any other pricing terms that set

the customer's price in a way that is tethered to prevailing retail prices.

49.    Excluded from the Class are:  Defendant; any parent, subsidiary, or affiliate of

Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant

otherwise controls or controlled; and any officer, director, employee, legal representative,

predecessor, successor, or assignee of Defendant. Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

50.     Plaintiffs reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add Subclasses, when Plaintiffs file their motion for class certification.

51.     Plaintiffs do not know the exact size of the Class since such information is in the exclusive control of HOP Energy. Plaintiffs believe, however that the Class encompasses at least tens of thousands of individuals whose identities can be readily ascertained from Defendant's books and records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

52.     The Class is ascertainable because its members can be readily identified using data and information kept by Defendant in the usual course of business and within its control. Plaintiffs anticipate providing appropriate notice to each Class Member in compliance with all applicable federal rules.

53.     Plaintiffs are adequate class representatives. Their claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiffs and the other members of the Class were subject to the same or similar conduct engineered by the Defendant. Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Defendant's conduct.

54.     Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class.

55.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

      a.  Whether Defendant breached its customer contracts and violated the duty of good faith and fair dealing;

      b.  Whether Class Members have been injured by Defendant's conduct;

      c.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

      d.  The extent of class-wide injury and the measure of damages for those injuries.

56.     A class action is superior to all other available methods for resolving this controversy because (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct; (3) Defendant has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

57.     Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

      a.  Whether Defendant breached its customer contracts and violated the duty of good faith and fair dealing;

      b.  Whether Class Members have been injured by Defendant's conduct; and

   c. Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices.

58. Accordingly, this action satisfies the requirements set forth under Federal Rule of Civil Procedure 23(a), 23(b), and 23(c)(4).

**CAUSES OF ACTION**

**COUNT I**

**BREACH OF CONTRACT**

**(ON BEHALF OF EACH CLASS MEMBER UNDER THE LAW OF THEIR STATE)**

59.  Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60. Plaintiffs and the Class entered into valid contracts with Defendant for the provision of heating oil supply.

61. Pursuant to those contracts, after the Pricing Period expired Defendant was required to charge the "prevailing retail price for home heating oil that [was] in effect at the time of delivery."

62. Pursuant to those contracts, Plaintiffs and all Class Members agreed to pay Defendant's rate and did so.

63. However, Defendant failed to perform its obligations under the contract, because its rates were not the "prevailing retail price for home heating oil that [was] in effect at the time of delivery."

64. Plaintiffs and all Class Members were damaged as a result because they were billed and paid prices for home heating oil that were higher than Defendant was authorized to charge under the contract's terms.

65.     As a result of Defendant's breaches, HOP Energy is liable to Plaintiffs and members of the Class for damages and attorney's fees and expenses.

## COUNT II

## IN THE ALTERNATIVE, BREACH OF THE IMPLIED COVENANT

## OF GOOD FAITH AND FAIR DEALING

## (ON BEHALF OF EACH CLASS MEMBER UNDER THE LAW OF THEIR STATE)

66.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     Plaintiffs and the Class entered into valid contracts with Defendant for the provision of home heating oil supply.

68.     Every contract has an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

69.     Under the contract, to the extent Defendant had discretion to set the price-per-gallon of home heating oil, it was obligated to exercise its discretion in good faith.

70.     Plaintiffs reasonably expected that Defendant's home heating oil rates would, notwithstanding Defendant's profit goals, reflect prevailing retail prices and that Defendant would not engage in price gouging.  Without these reasonable expectations, Plaintiffs and other Class Members would not have agreed to buy heating oil from Defendant.

71.     Defendant breached the implied covenant of good faith and fair dealing by unreasonably exercising its rate-setting discretion to price gouge and frustrate Plaintiffs' and other Class Members' reasonable expectations that Defendant's heating oil prices would be commensurate with prevailing retail prices.

72.     As a result of Defendant's breaches, HOP Energy is liable to Plaintiffs and members of the Class for damages and attorney's fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

(a)     Issue an order certifying the Class defined above, appointing the Plaintiffs as Class Representatives, and designating the undersigned firms as Class Counsel;

(b)     Find that Defendant has committed the violations of law alleged herein;

(c)     Render an award of compensatory damages of at least $50,000,000, the precise amount of which is to be determined at trial;

(d)     Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the practices alleged herein;

(e)     Declare that Defendant has committed the violations of law alleged herein;

(f)     Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(g)     Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiffs demands that a jury determine any issue triable of right.


Dated: August 17, 2023                                **WITTELS MCINTURFF PALIKOVIC**

                                         By:     */s/ J. Burkett McInturff*
                                                 J. Burkett McInturff (JM-4564)
                                                 Ethan D. Roman (ER-5569)
                                                 Daniel J. Brenner (DB-0267)
                                                 305 BROADWAY, 7TH FLOOR
                                                 NEW YORK, NEW YORK 10007
                                                 Telephone: (917) 775-8862
                                                 jbm@wittelslaw.com
                                                 edr@wittelslaw.com
                                                 djb@wittelslaw.com

                                                 **SHUB & JOHNS LLC**

                                                 Jonathan Shub
                                                 FOUR TOWER BRIDGE
                                                 200 BARR HARBOR DRIVE, SUITE 400
                                                 CONSHOHOCKEN, PA 19428
                                                 Telephone: (610) 477-8380
                                                 jshub@shublawyers.com

                                                 *Attorneys for Plaintiffs and the Proposed Class*