## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MELVILLE,<br>on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>        v.<br><br>HOP ENERGY, LLC,<br>               Defendant. | Case No.: 21 Civ. 10406 (KMK) (VR) |
| MICHELLE MULLANEY and ROBERT MULLANEY, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>HOP ENERGY, LLC,<br><br>               Defendant. | Case No.: 23 Civ. 7318 (KMK) (VR) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CIVIL CONTEMPT

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
Daniel J. Brenner (No. 5675198)
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile:  (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
djb@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub (JS-8128)
Samantha E. Holbrook*
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
CONSHOHOCKEN, PENNSYLVANIA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

*Admitted Pro Hac Vice*

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION AND RELEVANT BACKGROUND** ........................................................... **1**

I.    THE COURT APPOINTED INTERIM CLASS COUNSEL APPOINTMENT
TO PROTECT THE CLASSES ........................................................................................ 1

II.   HOP IMMEDIATELY VIOLATES THE ICC ORDER WITH A SECRET
SETTLEMENT IN *CALLERY* ........................................................................................ 4

**ARGUMENT** ....................................................................................................................... **6**

I.    HOP SHOULD BE HELD IN CONTEMPT FOR ITS WILLFUL VIOLATION
OF THE ICC ORDER ................................................................................................... 6

II.   THE APPROPRIATE REMEDY IS TO DIRECT HOP TO CARVE OUT THE
*MELVILLE* AND *MULLANEY* CLASSES FROM THE *CALLERY* SETTLEMENT
WITHIN 14 DAYS ....................................................................................................... 10

A.   The Court Should First Hold HOP in Contempt and Order a Carve-Out ............. 10

B.   The Court Should Enjoin HOP from Using *Callery* to Settle the Claims
of the Proposed Classes in *Melville* and *Mullaney* ............................................. 11

III.  IF HOP FAILS TO COMPLY WITH THE CONTEMPT ORDER, DEFAULT
SHOULD BE ENTERED ............................................................................................. 14

**CONCLUSION** ................................................................................................................ **15**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009) ................................................................. 14

*Allen v. Stewart Title Guar.*,
  246 F.R.D. 218 (E.D. Pa. 2007) ............................................................. 8

*AMMEX Corp. v. NY Healthlife*,
  LLC, No. 24 MDL 84 (KMK), 2024 WL 3102181 (S.D.N.Y. June 24, 2024) ........................ 11

*Bitzko v. Weltman, Weinberg, & Reis Co., LPA*,
  No. 17 Civ. 458 (BKS) (DJS), 2018 WL 10593815 (N.D.N.Y. May 18, 2018) ........................ 8

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
  814 F.3d 91 (2d Cir. 2016) .................................................................. 7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ..................................................................... 6, 10

*Citigroup Inc. v. Sayeg*,
  No. 21 Civ. 10413 (JPC), 2022 WL 1620298 (S.D.N.Y. May 23, 2022) ............................. 11

*Claridge v. N. Am. Power & Gas, LLC*,
  No. 15 Civ. 1261 (PKC), 2017 WL 3638455 (S.D.N.Y. Aug. 23, 2017) ............................. 4

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ....................................................... 4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  240 F.R.D. 56 (E.D.N.Y. 2006) .............................................................. 8

*In re Am. Online Spin-Off Accts. Litig.*,
  No. 03 Civ. 697, 2005 WL 5747463 (C.D. Cal. May 9, 2005) .................................... 13

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
  770 F.2d 328 (2d Cir. 1985) ......................................................... 12, 13, 14

*In re Checking Acct. Overdraft Litig.*,
  859 F. Supp. 2d 1313 (S.D. Fla. 2012) .............................................. 11, 12, 13

*In re Managed Care Litig.*,
  236 F. Supp. 2d 1336 (S.D. Fla. 2002) ................................................. 12, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05 MDL 1720 (JG), 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ............................... 12

*In re Reifler*,
    No. 18 Civ. 4711 (KMK), 2019 WL 396525 (S.D.N.Y. Jan. 31, 2019) ............................ 14, 15

*ITT Community Dev. Corp. v. Barton*,
    569 F.2d 1351 (5th Cir. 1978) ...................................................................................... 12

*Latino Officers Ass'n City of N.Y., Inc. v. City of New York*,
    558 F.3d 159 (2d Cir. 2009) ......................................................................................... 10

*Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*,
    88 F. Supp. 3d 250 (S.D.N.Y. 2015) ............................................................................. 14

*McCray v. Lee*,
    No. 16 Civ. 1730 (KMK), 2023 WL 6215302 (S.D.N.Y. Sept. 25, 2023) ............................ 14

*Mogull v. Pete & Gerry's Organics, LLC*,
    No. 21 Civ. 3521 (VB), 2022 WL 4661454 (S.D.N.Y. Sept. 30, 2022) ............................. 8, 9

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) ........................................................................... 9

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .......................................................................................... 2

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ......................................................................................... 10

*Salmonson v. Bed Bath and Beyond, Inc.*,
    No. 11 Civ. 2293 (SVW) (SSX), 2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) ................... 8

*Sec. & Exch. Comm'n v. Bronson*,
    No. 12 Civ. 6421 (KMK), 2023 WL 6238818 (S.D.N.Y. Sept. 26, 2023) ............................ 10

*Shillitani v. United States*,
    384 U.S. 364 (1966) ...................................................................................................... 7

*Turner v. Rogers*,
    564 U.S. 431 (2011) ................................................................................................. 7, 10

**Statutes**

18 U.S.C. § 1651 ........................................................................................................ 11

18 U.S.C. § 401 ........................................................................................................... 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... 7, 8

Fed. R. Civ. P. 65 ...................................................................................................................... 12

**Other Authorities**

MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES,
  (3d ed. 2010), § IV.C.5............................................................................................................ 9

*Manual for Complex Litigation (Fourth)*, § 21.11 ........................................................................ 8

## INTRODUCTION AND RELEVANT BACKGROUND

This application for an order to show cause arises out of Defendant's flagrant violation of this Court's Order appointing interim class counsel. That Order was granted to prevent precisely what happened here: a class action settlement negotiated by lawyers in a different case that purports to extinguish the Classes' claims here. As Plaintiffs explain below, the proper remedy for Defendant's overt defiance of the Court's Order is for the Court to hold Defendant in contempt and enjoin future violations of its Interim Counsel Order, ECF No. 128 (the "ICC Order").

## I.    The Court Appointed Interim Class Counsel Appointment to Protect the Classes

The above-captioned *Melville* and *Mullaney* cases were brought by variable rate customers of the nation's second largest home heating oil company, HOP Energy, LLC ("HOP" or "Defendant"). *Melville* and *Mullaney* arise from HOP's breach of contract and bad faith pricing practices that HOP used to overcharged tens of thousands of variable rate customers on their home heating oil. First Amended Class Action Complaint ¶ 1, ECF No. 31.[1] Plaintiffs calculate that HOP owes its variable rate customers more than $100 million. Joint Decl. ¶ 4.

*Melville* was filed in 2021, but after the Court issued its March 2023 order denying HOP's motion to dismiss that case and construing HOP's customer contract to effectively bar HOP's inflated monthly heating oil rates (ECF No. 24 at 16–17), HOP tried to skirt this Court's jurisdiction. HOP started claiming that another proposed class action pending against it called *Callery*—a case that had been floundering for years in the Eastern District of Pennsylvania—was the "first filed" case that should take priority. *See* ECF No. 32 (HOP's failed first-filed motion).

---

[1] Unless otherwise noted, ECF references are to *Melville v. HOP Energy, LLC*, No. 21 Civ. 10406 (S.D.N.Y.), and all Exhibit references are exhibits to the Joint Declaration of Jonathan Shub and J. Burkett McInturff ("Joint Decl."), dated August 1, 2024.

HOP tried to focus on *Callery* and avoid this Court because it was trying to set up a "reverse auction" scenario.[2] Part of HOP's strategy was (and continues to be) to posit that *Callery* subsumes the Classes here. *Nothing could be further from the truth.* As the Court made clear when it denied HOP's first-filed motion, *Callery* is a completely different case that challenges HOP's marketing and sales practices with respect to a ***different*** category of customer—HOP's capped-price customers, ***not*** the variable rate customers whose claims are pending here. *See* ECF No. 39 (the Court's order refusing to apply the first-filed rule because the cases "differ substantially," and finding that "[e]ssentially, *Callery* is based on the theory that Defendant did not honor its Capped Price promise."). The Court's rejection of HOP's first-filed claim should have ended the reverse auction strategy. But instead, HOP's failed first-filed motion proved to be just Defendant's opening salvo in a larger campaign.[3]

To be clear, not only is *Callery* about HOP's capped-price conduct, but also *Callery*'s counsel never pleaded the putative *Callery* class to encompass the nationwide claims being litigated here. *Callery* was originally brought in state court as a Pennsylvania-only class action with only a proposed "opt-in" subclass for non-Pennsylvania residents that affirmatively elected to join that case. Ex. A, *Callery* Complaint ¶¶ 6–14, *Callery* ECF No. 1-1. Further, despite *Callery*

---

[2] A reverse auction is where "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

[3] For example, HOP's continued threats to use *Callery* to settle *Melville* and *Mullaney* were so overt that defense counsel even admitted as much on the record during three separate conferences with Magistrate Judge Reznik. See Ex. B, Oct. 31, 2023 Hr'g Tr. 12:13–15, 18:12–14 (describing *Callery* as "actually apply[ing] to all types of contracts that we provide" and claiming that "that case is more – that class is broader"); Ex. C, Nov. 29, 2023 Hr'g Tr. 15:15–19 (claiming *Callery* "is a much broader class" that "includes the *Melville* Class plus anybody that has contractual language related to prevailing retail price"); Ex. D, Jan. 9, 2024 Hr'g Tr. 13:17–14:3 (arguing that "plaintiffs' counsel in *Callery* understands their proposed class" as having "overlapped with any—with at least the proposed classes in *Mullaney*" and "potentially with *Melville*").

having been filed in June 2020, when this Court rejected HOP's first-filed motion, *Callery* was no more advanced than *Melville or Mullaney*. Joint Decl. ¶ 6. In fact, after HOP removed *Callery* to federal court, Callery's counsel spent two years on two unsuccessful motions to remand *Callery* back to Pennsylvania state court. Joint Decl. ¶ 7. In the remand dispute, Callery claimed his class did not meet the $5 million jurisdictional threshold for federal jurisdiction under the Class Action Fairness Act. *Id.* As Callery's counsel explained, "Mr. Callery seeks to represent a class of similarly-situated customers of [HOP], both in Pennsylvania, and in other states where Defendants do business on an opt-in basis" and he seeks only fifty thousand dollars "on behalf of the entire class." Ex. E, Br. in Support of Plaintiff's Motion to Remand, at 1–2. Indeed, because of Callery's laser focus on getting back to Pennsylvania state court, the motion to dismiss in *Callery* was decided just four days prior to this Court's dismissal ruling in *Melville*.

Considering HOP's sustained reverse auction threats, the undersigned sought interim class counsel appointment and expressly cited HOP's "reverse auction" strategy as the primary reason. ECF No. 88 at 3. The interim counsel application's purpose was clear—protect the *Melville* and *Mullaney* classes by establishing the undersigned as sole negotiator for their Classes and thus allow *Callery* to go its separate way. *Id.* All parties understood that the interim counsel motion sought to stop a reverse auction in its tracks. In fact, at the hearing on Plaintiff's application, HOP's counsel admitted he was deploying this stratagem. Ex. D at 12:18–14:12.

Judge Reznik had the same concerns, and on May 17, 2024 granted the interim counsel motion. ECF No. 128. The Court identified HOP's reverse auction threat and held as follows:

> Understandably, the Plaintiffs in *Melville* and *Mullaney* are concerned that the Defendant's broader view will lead to the negotiation of a settlement in *Callery* that extinguishes all or part of their claims in *Melville* and *Mullaney*. In fact, during a January 9, 2024, conference, when directly asked if he would do so, Defense counsel hedged on whether he would settle any aspect of the *Melville* and *Mullaney* cases as part of a settlement with the plaintiffs in *Callery*. (ECF No. 100-3 at 13 –

15).  ***Thus, this Court finds that it would protect the putative classes in Melville and Mullaney to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving Callery.***

*Id.* at 3 (emphasis added).  Accordingly, and pursuant to the Court's authority under Rule 23(g), the Court consolidated the above-captioned actions—over HOP's objections—and appointed the undersigned as Interim Class Counsel in *Melville* and *Mullaney*.

## II.    HOP Immediately Violates the ICC Order with a Secret Settlement in *Callery*

Despite the ICC Order, HOP and *Callery's* counsel scheduled a secret mediation for June 6, and in a single day agreed to settle not only *Callery*, but also the *Melville* and *Mullaney* Classes. Joint Decl. ¶ 10; *see also* Ex. F, Declaration of *Callery's* Counsel in Support of Preliminary Approval, ¶ 15.  As predicted, HOP sought out—and found—the lowest bidder.[4]

The settlement of the *Melville* and *Mullaney* Classes was completely unauthorized, as Interim Class Counsel were excluded from the negotiations and did not (and do not) endorse the *Callery* settlement.  Joint Decl. ¶ 10.  HOP and Callery's counsel then spent the next seven weeks secretly preparing to submit their unauthorized settlement for preliminary approval in Pennsylvania.  Joint Decl. ¶ 11.  During this same period, Interim Class Counsel here proceeded apace with discovery, including recently securing the production of over seven hundred thousand

---

[4] Additionally, as noted above, when Callery and HOP reached their collusive agreement, the operative *Callery* complaint only alleged a Pennsylvania class and an impermissible opt-in class, meaning Callery had never even pleaded a class that could purport to fully encompass the *Melville* and *Mullaney* proposed Classes.  To cure this, Callery amended his complaint on July 16, after filing his preliminary approval papers, one day after his settlement agreement was signed, and seven weeks after the reverse auction settlement was reached in principle.  *Compare* Ex. G (*Callery* Am. Compl. filed on July 16, 2024), *with* Ex. F, Declaration of Callery's Counsel in Support of Preliminary Approval, ¶ 15 (agreement in principle reached at a secret mediation on June 6, 2024); *see also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (explaining that the court could not ignore "the perception . . . that [defendant] selected counsel confronted with a most precarious position, [and] insisted upon amendments to the pleading to broaden the scope of this litigation to obtain a global peace"); *Claridge v. N. Am. Power & Gas, LLC*, No. 15 Civ. 1261 (PKC), 2017 WL 3638455, at *1 (S.D.N.Y. Aug. 23, 2017) (rejecting settlement in energy billing litigation where "[t]he proposed settlement dramatically expands the class definition from a New York-only class to a class that includes all ratepayers across the nation.").

additional documents from HOP—documents that contain clear proof of massive overcharges and damming statements by HOP's top brass.  Joint Decl. ¶ 4.

Then, on July 16, 2024, HOP revealed for the first time it had reached a settlement in *Callery* that purports to extinguish the claims of the *Melville* and *Mullaney* Classes.  Joint Decl. ¶ 12.  The next day, the parties appeared before Judge Reznik at a status conference that was originally scheduled to address HOP's failure to timely complete document production.  ECF No. 131.  However, the bulk of the conference was spent addressing HOP's brazen violation of the ICC Order.  Notably, at the conference, HOP's counsel sheepishly admitted to making no effort whatsoever to carve the *Melville* and *Mullaney* Classes out of *Callery*.  *See* Ex. H, July 17, 2024 Hr'g Tr. 22:6–7 ("So, no, there was not an attempt to carve [*Melville* and *Mullaney*] out . . . .").

Instead, HOP made the bizarre claim that its willful conduct was above board because, according to HOP, the ICC Order did not use the explicit words "sole settlement authority," *id.* at 13:16–22, when appointing Interim Class Counsel.  In fact, at the exact same conference HOP admitted that it understood that the very purpose of the interim counsel motion was to establish "sole settlement authority" **over the *Melville* and *Mullaney* Classes.**  *Id.*  Nevertheless, HOP claimed that the absence of the express phrase "sole settlement authority" rendered the ICC Order meaningless.  *But see* ICC Order at 3 ("Thus, this Court finds that it would protect the putative classes in *Melville* and *Mullaney* to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving *Callery*.").

In sum, (i) more than a year ago the Court held that the capped-price customer's claims in *Callery* "differ substantially" from the variable rate customers' claims at issues here; (ii) HOP continued threatening a reverse auction anyway; (iii) Plaintiffs' here then moved for appointment of interim class counsel to stave off HOP's improper stratagem and secure sole settlement authority

on behalf of the *Melville* and *Mulaney* Classes; (iv) the Court agreed with Plaintiffs, specifically recognized HOP's threat, and designated the undersigned as Interim Class Counsel in *Melville* and *Mullaney* because doing so "ensures" that those absent class members "will be adequately represented in any settlement involving *Callery*"; yet nonetheless (v) HOP willfully, secretly, and in bad faith ran the exact reverse auction the ICC Order expressly prohibited.

The Court should swiftly hold HOP in contempt until it carves the *Melville* and *Mullaney* proposed Classes out of its *Callery* settlement. The ICC Order already barred HOP from using *Callery* to settle *Melville* and *Mullaney* without the participation and authorization of Interim Class Counsel. In addition, and as explained below, the Court should follow the well-reasoned holdings of other courts faced with similar reverse auctions and use the All Writs Act to enjoin HOP from trying to use *Callery* to release the claims of the *Melville* and *Mullaney* Classes. Finally, if HOP fails to comply within the next 14 days of the Court's finding of contempt, the Court should issue terminating sanctions.

Before moving for this Order to Show Cause, Interim Class Counsel conferred with defense counsel on July 23, 2024 and demanded that HOP comply with the ICC Order and carve out the *Melville* and *Mullaney* classes from the *Callery* settlement. Joint Decl. ¶ 13. Defense counsel stated he would discuss this with his client but advised that he assumed HOP would choose to stay its course. *Id.* Defense counsel has not responded to Plaintiffs' demand.

## ARGUMENT

## I.    HOP Should Be Held in Contempt for Its Willful Violation of The ICC Order

"[T]he underlying concern that gave rise to the contempt power . . . was disobedience to the orders of the Judiciary." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Under 18 U.S.C. § 401(3), the Court can hold HOP in contempt for its "[d]isobedience or resistance to [the Court's] lawful . . . order." In addition, "[t]here can be no question that courts have inherent power to

6

enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt "seeks only to coerce the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011) (cleaned up).

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016). Here, the second and third contempt elements are not at issue because HOP admitted them on the record, stating: (i) HOP "pick[ed] up settlement discussions with plaintiffs' counsel in *Callery*," Ex. H at 14:7–9; (ii) "there was not an attempt to carve [the *Melville* and *Mullaney* Classes] out" of the *Callery* settlement, *id.* at 21:19–22:8; and (iii) the *Callery* settlement "would cover the purported *Melville* and *Mullaney* classes," *id.* at 12:23–25.

Similarly, the first element is easily met because the ICC Order was clear and unambiguous. Indeed, the ICC Order's very first paragraph invokes Rule 23 (g)(3) and unmistakably designates the undersigned as Interim Class Counsel. ICC Order at 1 ("Before the Court are Plaintiffs' motions to appoint their counsel, Wittels McInturff Palikovic and Shub & Johns LLC, as interim co-lead class counsel in *Melville* and *Mullaney* under Rule 23(g)(3) of the Federal Rules of Civil Procedure. Plaintiffs also request that *Melville* and *Mullaney* be consolidated. For the reasons below, the motions are **GRANTED**, and the two cases are consolidated for all purposes.").

Rule 23(g) is clear that interim class counsel are the ***only*** counsel authorized to "act on behalf of a putative class" before it is certified. Fed. R. Civ. P. 23(g)(3); *see also* ICC Order at 1 (appointing the undersigned "as interim co-lead class counsel in *Melville* and *Mullaney* under Rule 23(g)(3)). Indeed, the interim class counsel device is specifically designed to delineate

7

settlement authority over potentially competing, yet uncertified classes. *See* advisory committee's note to Fed. R. Civ. P. 23 ("Settlement may be discussed before certification. Ordinarily, such work is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate."). The Federal Judicial Center's *Manual for Complex Litigation* also makes this clear, noting that the "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as . . . ***negotiating settlement***." *Manual for Complex Litigation (Fourth)*, § 21.11 (emphasis added). Because the Rule 23(g)(3) designation provides sole negotiating authority, the ICC Order did not need to use the words "sole settlement authority" or "sole authority to conduct settlement negotiations," as HOP wrongly claims. The ICC Order's reliance on Rule 23(g) was sufficient to clearly and unambiguously grant Interim Class Counsel sole negotiating authority for the *Melville* and *Mullaney* Classes. ICC Order at 1.

The case law is likewise clear: interim class counsel "ha[ve] the responsibility for . . . negotiating settlement." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (quoting *Manual for Complex Litigation (Fourth)*, § 21.11).[5] In fact, the Federal Judicial Center recognizes that it is an "an especially suspicious circumstance" when one lawyer settles the class another lawyer is litigating. MANAGING CLASS ACTION LITIGATION: A POCKET

---

[5] *See also Mogull v. Pete & Gerry's Organics, LLC*, No. 21 Civ. 3521 (VB), 2022 WL 4661454, at *1 (S.D.N.Y. Sept. 30, 2022) ("[G]iven the significant work that has already been done in this case and the pendency of a potentially overlapping action, granting this [m]otion will provide the parties and their counsel with needed certainty regarding further litigation of this matter and is necessary to protect the interests of the putative class"); *see also Bitzko v. Weltman, Weinberg, & Reis Co., LPA*, No. 17 Civ. 458 (BKS) (DJS), 2018 WL 10593815, at *1 (N.D.N.Y. May 18, 2018) (similar); *Allen v. Stewart Title Guar.*, 246 F.R.D. 218, 219 (E.D. Pa. 2007) (appointing interim class counsel will "guard against" the "problems in which the settlement of one case prematurely extinguishes the claims in the other"); *Salmonson v. Bed Bath and Beyond, Inc.,* No. 11 Civ. 2293 (SVW) (SSX), 2012 WL 12919187, at *5 (C.D. Cal. Apr. 27, 2012) (once interim lead counsel is appointed, defendant "did not—and could not—choose the attorneys with whom it would negotiate. . . . Under these circumstances, no 'reverse auction' could occur").

GUIDE FOR JUDGES, (3d ed. 2010), § IV.C.5  (a settlement "with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, [is] an especially suspicious circumstance.").

Lastly, the record here independently establishes that the ICC Order clearly, unambiguously, and indeed expressly prohibited the exact course of action HOP adopted mere days later.  Plaintiffs' interim class counsel motion was precipitated by HOP's repeated reverse auction threats, which all parties clearly and unambiguously understood.  The undersigned's interim class counsel brief clearly explained that "Counsel for HOP has repeatedly (and wrongly) claimed that *Callery* subsumes the cases before this Court, thereby improperly suggesting that it can use a settlement in *Callery* to extinguish all or part of *Melville* and *Mullaney*."  ECF 99 at 8.  This fact was also discussed at the conference on Plaintiff's application and Judge Reznik confronted defense counsel and he admitted that a reverse auction was afoot.  Ex. D at 12:18–14:12.  The Court then agreed with Plaintiffs and appointed the undersigned as Interim Class Counsel to "ensure[] that [the *Melville* and *Mullaney* Classes] will be adequately represented in any settlement involving *Callery*."  ICC Order at 3.  Moreover, the Court noted that interim class counsel's purpose is "to safeguard the interests of the class."  *Id.* at 2 (quoting *Mogull*, 2022 WL 4661454 at *1).

Notwithstanding the Court's clear and unambiguous ICC Order, HOP openly violated it by excluding Interim Class Counsel from secret settlement negotiations and an agreement that purports to release the *Melville* and *Mullaney* claims.  *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121 (N.D. Cal. 2016) (courts must be "especially sensitive to the risk of collusion or a less than full adversarial process where claims pending in other lawsuits are released for minimal value.").  HOP has no excuse for violating the Court's clear and unambiguous ICC Order,

and each further step it takes to use *Callery* to settle *Melville* and *Mullaney* is a continuing violation

of the Court's ICC Order.  HOP should be held in contempt.

## II. The Appropriate Remedy Is to Direct HOP to Carve Out the *Melville* and *Mullaney* Classes from the *Callery* Settlement Within 14 Days

### A. The Court Should First Hold HOP in Contempt and Order a Carve-Out

As has always been Plaintiffs' position, HOP is free to try to settle capped-priced

customers' claims in the *Callery* case.  *See* Ex. D at 5:24–6:3 ("We are not objecting to HOP

settling *Callery*.  What we are trying to do with our interim class counsel motion is just make it --

make it clear that HOP can't settle our cases when it settles -- if and when it settles *Callery*.").

This Court appointed the undersigned as Interim Class Counsel to represent HOP's variable rate

customers at the negotiating table.  HOP willfully violated that Order and continues to do so.

"Unlike criminal contempt, civil contempt is remedial in nature, and 'seeks only to coerce

the defendant to do what a court had previously ordered him to do." *Sec. & Exch. Comm'n v.

Bronson*, No. 12 Civ. 6421 (KMK), 2023 WL 6238818, at *4 (S.D.N.Y. Sept. 26, 2023) (quoting

*Turner v. Rogers*, 564 U.S. 431, 441 (2011)).  "But despite its non-punitive nature, a civil contempt

order is still a 'potent weapon.'" *Id.* (quoting *Latino Officers Ass'n City of N.Y., Inc. v. City of

New York*, 558 F.3d 159, 164 (2d Cir. 2009)).  "Civil contempt sanctions may serve dual purposes:

securing future compliance with court orders and compensating the party that has been wronged."

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 146 (2d Cir. 2010) (cleaned up).

The remedies Plaintiffs seek here are narrowly tailored to achieve compliance with the ICC

Order and are substantially less punitive than analogous contempt findings, as Plaintiffs do not

presently request fines or fees.  *See, e.g.*, *Chambers*, 501 U.S. at 44 ("[A] court's discretion to

determine the degree of punishment for contempt permits the court to impose as part of the fine

attorney's fees representing the entire cost of the litigation."); *Citigroup Inc. v. Sayeg*, No. 21 Civ.

10413 (JPC), 2022 WL 1620298, at *4–5 (S.D.N.Y. May 23, 2022) (fining a contemnor $15,000 per day that it fails to comply); *AMMEX Corp. v. NY Healthlife, LLC*, No. 24 MDL 84 (KMK), 2024 WL 3102181, at *3 (S.D.N.Y. June 24, 2024) (imposing a daily fine on contemnor that would increase in regular intervals until compliance).[6]

Because of HOP's blatant disregard for this Court's clear directive, the Court should hold HOP in contempt and order it to carve out the *Melville* and *Mullaney* Classes from any settlement in *Callery* within 14 days. As discussed below, the Court should also use the All Writs Act to enjoin HOP from proceeding with any settlement containing a release of the *Melville* and *Mullaney* class claims. Finally, if HOP does not timely comply with the contempt order, the Court should dismiss HOP's Answers in *Melville* and *Mullaney* and enter a default against it.

### B. The Court Should Enjoin HOP from Using *Callery* to Settle the Claims of the Proposed Classes in *Melville* and *Mullaney*

With or without a finding of contempt, the Court can and should enter an injunction pursuant to the All Writs Act, 18 U.S.C. § 1651(a), that prohibits HOP from settling the claims of the proposed *Melville* and *Mullaney* Classes in *Callery*.

"[T]he All Writs Acts was designed for situations where the proposed settlement and release of claims in another judicial district" materially interferes with a court's disposition of the claims before it. *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012) (enjoining reverse auction settlement reached in other court). "The scope of a federal court's power under the All Writs Act depends on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power" and "any order under the Act must be 'directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Managed*

---

[6] Plaintiffs reserve the right to seek additional sanctions if HOP's disobedience continues.

*Care Litig.*, 236 F. Supp. 2d 1336, 1339–40 (S.D. Fla. 2002) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978)). "Thus, even though the powers under the Act are in general narrowly circumscribed, the Act frequently enables a court to issue preliminary orders which will quell a threat to the proper exercise of its jurisdiction." *Id.*

The Second Circuit has also held that "Rule 65 does not apply to injunctions issued under the All-Writs Act." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 339 (2d Cir. 1985); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05 MDL 1720 (JG), 2014 WL 4966072, at *32 (E.D.N.Y. Oct. 3, 2014) ("[A] court's authority to issue an injunction under the [All Writs] Act is not limited by Rule 65.").[7] Instead, "the findings of the district court that the injunction was necessary to preserve its jurisdiction and protect its judgments, if sustainable, would be sufficient to justify the issuance of the injunction under the All-Writs Act." *In re Baldwin-United Corp.*, 770 F.2d at 336.

An injunction here is needed to preserve the Court's jurisdiction because the Court has already twice ruled that the claims of the *Melville* and *Mullaney* Classes should be adjudicated here: first, when the Court refused to stay *Melville* under the first-filed rule; second, when the Court appointed Interim Class Counsel. Notwithstanding this Court's clear assertion of jurisdiction over the *Melville* and *Mullaney* Classes, HOP seeks to evade this Court's jurisdiction via a reverse-auction settlement in *Callery*.

*Checking Acct. Overdraft* and *Managed Care* are instructive. In both cases, a federal court was overseeing a proposed class action when a separate federal court preliminarily approved a settlement that would have extinguished the claims pending in both courts. *Checking Acct. Overdraft*, 859 F. Supp. 2d at 1318–19; *Managed Care*, 236 F. Supp. 2d at 1338–39. In both cases,

---

[7] To the extent the Rule 65 factors are instructive, Plaintiffs easily satisfy them here.

the All Writs Act was used to enjoin the defendant from finalizing the settlement that had been preliminarily approved in the other District because those settlements would evade the court's jurisdiction over the claims pending before it. *See Managed Care*, 236 F. Supp. 2d at 1342 ("Admittedly, in most instances, the issuance of an injunction would be in order to protect a settlement. Here, instead this Court seeks to prevent a settlement. This Court is well aware of the strong public interest favoring settlements. However, it cannot turn a blind eye to the underhanded maneuvers [the defendant] took to obtain this settlement agreement. [The defendant] snookered both this Court and Judge Murphy in Illinois in an obvious attempt to avoid this Court's jurisdiction."); *see also Checking Acct. Overdraft*, 859 F. Supp. 2d at 1325 (issuing injunction to prevent and deter others from settling actions outside the jurisdiction of the court, which "undermin[es] the ongoing litigation against [the defendants]."). Other courts agree. *See Baldwin-United Corp.* 770 F.2d at 335–40 (affirming All Writs Act injunction that prevented state court from finalizing a class action settlement because it would interfere with federal class action); *see also In re Am. Online Spin-Off Accts. Litig.*, No. 03 Civ. 697, 2005 WL 5747463, at *5 (C.D. Cal. May 9, 2005) (enjoining state court settlement because after the defendant "was unsuccessful in settling . . . before this Court, it secretly negotiated to settle . . . [in a] state court action in Illinois").

Here, HOP is maneuvering to avoid this Court's multiple assertions of jurisdiction. "How [Defendant] can, with a straight face, argue to this Court that its maneuvering is agreeable to the usages and principles of law, is incredulous." *Managed Care*, 236 F. Supp. 2d at 1342. Because of HOP's bad-faith violation of the ICC Order and efforts to escape this Court's jurisdiction, an injunction under the All Writs Act is "necessary to preserve [the Court's] jurisdiction" and ensure that the *Melville* and *Mullaney* claims are adjudicated in this Court. *In re Baldwin-United Corp.*,

770 F.2d at 336.  Accordingly, with or without a finding of contempt, the Court can and should enjoin HOP from settling the claims of the proposed *Melville* and *Mullaney* classes in *Callery*.

### III.   If HOP Fails to Comply with the Contempt Order, Default Should Be Entered

While the Court's coercive authority for contempt is broad and discretionary, defaults are a common sanction in the separate Rule 37 context.   In that context, before issuing case-terminating sanctions, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *McCray v. Lee*, No. 16 Civ. 1730 (KMK), 2023 WL 6215302, at *3 (S.D.N.Y. Sept. 25, 2023) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  While these factors apply in the Rule 37 context, not specifically in the contempt context, they are instructive here, should HOP continue to violate the ICC Order.

First, HOP has already admitted that its conduct is willful.  *See Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 264 (S.D.N.Y. 2015) ("In other words, we gave an order and defendants had the ability to comply, but they purposefully chose not to do so for reasons all their own and without first asking permission from this court.  Without our resorting to the dictionary, this seems as good a definition of 'willful' as any.").

Second, lesser sanctions would likely be ineffective because HOP has ignored two orders asserting jurisdiction over this case, and HOP already violated the ICC Order in a way that seeks to effectively terminate *Melville* and *Mullaney*.  Moreover, terminating sanctions would only be imposed after HOP violated a contempt order requiring it to carve the *Melville* and *Mullaney* proposed Classes out of the *Callery* settlement.  *See In re Reifler*, No. 18 Civ. 4711 (KMK), 2019 WL 396525, at *9 (S.D.N.Y. Jan. 31, 2019) (default is an appropriate remedy where a defendant violated an order and later the contempt order).

14

Third, the duration of non-compliance has been since HOP began colluding with Callery's counsel to thwart the ICC Order. This has been ongoing since at least June 6, but notably, HOP began threatening a reverse auction after this Court's March 2023 dismissal ruling. ECF No. 24.

Fourth, the contempt Order itself would warn HOP that a default will be entered if it continues to violate the ICC Order. Giving HOP 14 days to carve out the *Melville* and *Mullaney* Classes from *Callery* provides it sufficient time to comply, and any continued violation favors a powerful sanction. Indeed, if HOP were to continue to violate a contempt order, entering a default would "make abundantly clear that this Court's orders are mandates, not optional directives that [Defendant] is free to interpret and abide by at [its] leisure." *In re Reifler*, 2019 WL 396525 at *9.

Accordingly, the relief Plaintiffs seek here is both narrowly tailored and appropriate. Plaintiffs do not seek fees or fines at this time, but rather to simply enforce the ICC Order and keep this litigation on track. A finding of contempt and an injunction will accomplish this, but the sanction of default will provide HOP with further incentive to comply. The immediate relief requested here will give HOP a final chance to comply with the Court's ICC Order—if HOP complies, it will essentially face no consequence and the litigation will resume in the ordinary course; if HOP persists in its ill-advised conduct, a default should be entered against it.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) hold HOP in contempt, (ii) enjoin it from settling the claims of the proposed *Melville* and *Mullaney* Classes through *Callery*, and (iii) enter a default against HOP if it fails to carve out the *Melville* and *Mullaney* proposed Classes from any *Callery* settlement within 14 days.

---

[8] Plaintiffs request an expedited briefing schedule for this application. In connection with HOP's separately filed stay application, HOP requested "an expedited briefing schedule, as expedited as possible[.]" Ex. H at 23:1–2. Similarly, Plaintiffs respectfully ask for this application to be adjudicated on an expedited basis.

Dated:  August 1, 2024             Respectfully submitted,

**WITTELS MCINTURFF PALIKOVIC**

By:    <u>/s/ J. Burkett McInturff</u>
        J. Burkett McInturff (JM-4564)
        Ethan D. Roman (ER-5569)
        Daniel J. Brenner (No. 5675198)
        305 BROADWAY, 7TH FLOOR
        NEW YORK, NEW YORK 10007
        Telephone: (914) 775-8862
        Facsimile: (914) 775-8862
        jbm@wittelslaw.com
        edr@wittelslaw.com
        djb@wittelslaw.com

        **SHUB & JOHNS LLC**
        Jonathan Shub (JS-8128)
        Samantha E. Holbrook*
        FOUR TOWER BRIDGE
        200 BARR HARBOR DRIVE, SUITE 400
        CONSHOHOCKEN, PA 19428
        Telephone: (610) 477-8380
        jshub@shublawyers.com
        sholbrook@shublawyers.com

        *Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

        *Admitted Pro Hac Vice