UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MELVILLE, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>HOP ENERGY, LLC,<br>      Defendant. | Case No.: 21 Civ. 10406 (KMK) (VR) |
| MICHELLE MULLANEY and ROBERT MULLANEY, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>HOP ENERGY, LLC,<br>      Defendant. | Case No.: 23 Civ. 7318 (KMK) (VR) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTIONS PENDING APPROVAL OF SETTLEMENT**

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
Daniel J. Brenner (No. 5675198)
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile:  (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
djb@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub (JS-8128)
Samantha E. Holbrook*
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
CONSHOHOCKEN, PENNSYLVANIA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

*\* Admitted Pro Hac Vice*

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 1

**FACTUAL BACKGROUND** ........................................................................................................ 1

**ARGUMENT** .................................................................................................................................. 4

    I.    HOP'S REQUESTED STAY IS BARRED BY THE LAW OF THE CASE ...................... 4

    II.   THE RELEVANT STAY FACTORS STRONGLY WEIGH AGAINST A STAY .............. 5

**CONCLUSION** ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................................. 12

*Barnes v. Wells Fargo Bank, N.A.*,
   No. 18 Civ. 6520 (JCS) (N.D. Cal. Jan. 25, 2019) .............................................................. 10, 11

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009) .......................................................................................11

*City of Detroit v. Grinnell Corp.*,
   560 F.2d 1093 (2d Cir. 1977) ...................................................................................................11

*Dalchau v. Fastaff, LLC*,
   No. 17 Civ. 1584 (WHO), 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) .................................. 6

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................................................................................... 7

*Frilando v. Dutchess Sch. of Driving, Inc.*,
   No. 15 Civ. 3972 (VB), 2016 WL 9503817 (S.D.N.Y. Apr. 18, 2016) ...................................... 5

*Gulf Oil v. Bernard*,
   452 U.S. 89 (1981) ...................................................................................................................11

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   99 F. Supp. 3d 288 (E.D.N.Y. 2015) ....................................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ...................................................................................................... 9

*In re Traffic Executive Association–Eastern Railroads*,
   627 F.2d 631 (2d Cir. 1980) .....................................................................................................11

*J.W. v. Pfizer, Inc.*,
   No. 13 Civ. 318 (YGR), 2013 WL 1402962 (N.D. Cal. Apr. 5, 2013) ....................................11

*Johnson v. Holder*,
   564 F.3d 95 (2d Cir. 2009) ............................................................................................... 4, 5, 9

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................................ 8

*Keystone Coke Co. v. Pasquale*,
   No. 97 Civ. 6074, 1999 WL 126917 (E.D. Pa. Mar. 9, 1999) .................................................. 8

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .................................................................................................. 5, 7

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ........................................................................................ 7

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
    No. 09 Civ 3529 (JSW) (LB), 2012 WL 5519199 (N.D. Cal. Nov. 14, 2012) ........................ 8

*McBryde-O'Neal v. Polichetti*,
    No. 23 Civ. 10113 (JPC) (RFT), 2024 WL 2274323 (S.D.N.Y. May 20, 2024) ...................... 5

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
    660 F.2d 9 (2d Cir. 1981) .............................................................................................. 8

*Runion v. U.S. Shelter,* 9
    8 F.R.D. 313 (D.S.C. 1983) ........................................................................................... 11

*Scheffer v. Civil Serv. Employees Ass'n*, *Local 828*,
    No. 05 Civ. 6700 (MAT), 2006 WL 7066914 (W.D.N.Y. Oct. 24, 2006) ............................. 11

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*,
    175 F. Supp. 2d 573 (S.D.N.Y. 2001) ............................................................................ 10

*Thorogood v. Sears, Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) ........................................................................................ 12

*Torliatt v. Ocwen Loan Servicing, LLC*,
    No. 19 Civ. 4303 (WHO), 2020 WL 10964876 (N.D. Cal. Oct. 2, 2020) .............................. 7

*United States v. Whitaker*,
    No. 21-595, 2024 WL 1266348 (2d Cir. Mar. 26, 2024) .................................................... 4

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*,
    439 F.3d 165 (2d Cir. 2006) .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 12

**Other Authorities**

John C. Coffee, Jr., Class Wars: The Dilemma of the Mass Tort Class Action,
    95 COLUM. L. REV. 1343, 1370 (1995) ............................................................................ 1

**INTRODUCTION**

Defendant HOP Energy ("HOP") is attempting to employ the classic two-step reverse auction playbook. First, it is trying to settle the *Melville* and *Mullaney* Classes in the *Callery* case in remarkable defiance of this Court's interim class counsel order. Second, it is moving to halt all litigation in this action by expressing a feigned concern for preserving resources for its proposed low-ball settlement in *Callery*. This is an archetypical "recurring scenario" of a reverse auction settlement in which an "inactively litigated action" is settled "so as to preclude a decision in a more aggressively litigated federal action."[1] As explained below, the clear record in this case requires that HOP's stay motion be swiftly denied.

**FACTUAL BACKGROUND**

While this Court is familiar with the facts leading up to HOP's stay motion, a brief summary is helpful to underscore why HOP's stay request is improper.

HOP has engaged in an overt campaign to marginalize this action. As soon as Judge Karas denied HOP's motion to dismiss in March 2023, HOP started trying to use the *Callery* litigation that had been floundering in Pennsylvania to extinguish the claims Plaintiffs bring here. First, HOP sought to put *Callery* in the lead by unsuccessfully moving to stay *Melville* based on the false claim that "the putative class in the *Melville* Action is a subset of the putative class in the *Callery* Action." *Melville*, ECF No. 39 ("Stay Denial Order") at 2.

Whether this case is subsumed by *Callery* was a linchpin issue that Judge Karas resolved over a year ago. Specifically, Judge Karas unequivocally held that *Callery* and *Melville* do ***not*** present identical or substantially similar parties and claims and that *Callery* was ***not*** "first-filed." *Id.* at 2–3. This is because *Callery* "differ[s] substantially" from this litigation due to the fact that

---

[1] John C. Coffee, Jr., Class Wars: The Dilemma of the Mass Tort Class Action, 95 COLUM. L. REV. 1343, 1370 (1995).

1

"[e]ssentially, *Callery* is based on the theory that Defendant did not honor its Capped Price promise," whereas this case focuses on HOP's variable plan practices. *Id.* at 3.

Judge Karas's ruling should have ended HOP efforts to use *Callery* to undercut this case. Yet strangely undeterred, HOP ignored Judge Karas and continued to make its false "subset" claim at three different conferences with Your Honor. *See* Ex. A,[2] Oct. 31, 2023 Hr'g Tr. 12:13–15, 18:12–14 (describing *Callery* as "actually apply[ing] to all types of contracts that we provide" and claiming that "that case is more – that class is broader"); Ex. B, Nov. 29, 2023 Hr'g Tr. 15:15–19 (claiming *Callery* "is a much broader class" that "includes the *Melville* Class plus anybody that has contractual language related to prevailing retail price"); Ex. C, Jan. 9, 2024 Hr'g Tr. 13:17–14:3 (arguing that "plaintiffs' counsel in *Callery* understands their proposed class" as having "overlapped with any—with at least the proposed classes in *Mullaney*" and "potentially with *Melville*").

Recognizing the looming threat of a reverse auction, Plaintiffs brought this specter to the Court's attention and moved to have their counsel appointed as interim class counsel. At the ensuing pre-motion hearing, HOP surprisingly refused to disavow its improper strategy when confronted by this Court. ECF No. 128 ("ICC Order") at 3. Then, after extensive briefing—in which HOP steadfastly opposed appointment of interim class counsel—on May 17, 2024, the Court granted Plaintiffs' motion. In so doing, the Court first observed that even before class certification it may become necessary to appoint interim class counsel to "safeguard the interests of the class." ICC Order at 2 (citations omitted). Here, the Court expressly identified HOP's

---

[2] Unless otherwise noted, all Exhibit references are exhibits to the Joint Declaration of Jonathan Shub and J. Burkett McInturff ("Joint Decl."), dated August 1, 2024.

2

improper strategy as the specific threat requiring interim counsel appointment and granted Plaintiffs' motion to put an end to HOP's tactics:

> Understandably, the Plaintiffs in *Melville* and *Mullaney* are concerned that the Defendant's broader view will lead to the negotiation of a settlement in *Callery* that extinguishes all or part of their claims in *Melville* and *Mullaney*. In fact, during a January 9, 2024, conference, when directly asked if he would do so, Defense counsel hedged on whether he would settle any aspect of the *Melville* and *Mullaney* cases as part of a settlement with the plaintiffs in *Callery*. (ECF No. 100-3 at 13 – 15). ***Thus, this Court finds that it would protect the putative classes in Melville and Mullaney to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving Callery.***

*Id.* at 3 (emphasis added).

Yet, on July 16, HOP revealed that it had again thumbed its nose at the Court and had secretly negotiated a settlement in *Callery* that purports to encompass the *Melville* and *Mullaney* Classes. This settlement was completely unauthorized, as Interim Class Counsel were excluded from the negotiations and did not—and do not—endorse the *Callery* settlement. Joint Decl. ¶ 10. In fact, the undersigned were not even made aware that such negotiations were occurring. *Id.* Instead, on July 16, HOP's counsel blindsided Interim Class Counsel with the news that in a one-day, secret mediation on June 6, Callery's lawyer negotiated a settlement that purported to end this action. Joint Decl. ¶¶ 10–12. Notably, the secret June 6 mediation occurred while a March 4 joint global settlement demand was still outstanding. Joint Decl. ¶ 10. On May 24, 2024, Interim Class Counsel even held a telephone conference with HOP's counsel to enquire about HOP's response to this global demand. *Id.* Thereafter, Interim Class Counsel heard nothing and instead, on July 16 and mere hours after disclosing the secret deal, HOP and the plaintiff's lawyer in *Callery* sought preliminary settlement approval. Joint Decl. ¶ 12.

The collusive *Callery* settlement makes a mockery of the Stay Denial Order and the ICC Order. In fact, because the ICC Order expressly appointed the undersigned to act on behalf of the

proposed *Melville* and *Mullaney* Classes "in **any settlement** involving *Callery*," and because the proposed *Callery* settlement seeks to completely extinguish the claims of the *Melville* and *Mullaney* Classes, Plaintiffs are concurrently moving the Court for an Order to Show Cause why Defendant should not be held in civil contempt for its willful violation of the ICC Order. Pursuant to that application, Plaintiffs are asking that the Court order HOP to carve out the *Melville* and *Mullaney* Classes from any *Callery* settlement, enjoin the *Callery* settlement in its current form, and enter a default if HOP does not comply.

## ARGUMENT

### I. HOP'S REQUESTED STAY IS BARRED BY THE LAW OF THE CASE

Judge Karas already ruled, after both parties were heard, that this case is not subsumed by *Callery*. "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation omitted). Indeed, the law of the case doctrine "forecloses reconsideration of issues that were decided during prior proceedings." *United States v. Whitaker*, No. 21-595, 2024 WL 1266348, at *4 (2d Cir. Mar. 26, 2024).

Remarkably, and in spite of this Court's ruling, HOP's entire reverse auction settlement strategy is predicated on the false premise that *Callery* is so similar to this action that it can be used to settle *Melville* and *Mullaney*. For example, HOP claims in its stay motion that "the *Callery* Plaintiffs assert causes of action for the same claims—breach of contract and breach of the implied covenant of good faith and fair dealing—asserted by *Melville* and *Mullaney*." Def.'s Br. at 7. But Judge Karas already ruled against HOP on this issue. The many causes of action asserted in *Callery* may include the same causes of action asserted in *Melville* and *Mullaney*, but it is the law of the

4

case that the factual predicate for those claims is materially different. HOP is not permitted to second-guess Judge Karas by relitigating settled issues.

Again, Judge Karas expressly rejected HOP's claim that "the putative class in the *Melville* Action is a subset of the putative class in the *Callery* Action." Stay Denial Order at 2. In recycling the same arguments, HOP presents no "cogent and compelling reasons" to reject the law of the case. *Johnson*, 564 F.3d at 99. HOP's stay motion should be denied on these grounds alone.

## II. THE RELEVANT STAY FACTORS STRONGLY WEIGH AGAINST A STAY

As the Supreme Court pronounced in *Landis v. North American Co.*, 299 U.S. 248, 255 (1936), "only in rare circumstances will a litigant in one cause be compelled to stand aside while litigants in another settles the rule of law that will define the rights of both." While the decision to stay a case is matter of discretion, courts in this Circuit typically consider five factors in assessing a stay request: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interest of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *McBryde-O'Neal v. Polichetti*, No. 23 Civ. 10113 (JPC) (RFT), 2024 WL 2274323, at *1 (S.D.N.Y. May 20, 2024) (citation omitted).

Further, "the party moving for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Frilando v. Dutchess Sch. of Driving, Inc.*, No. 15 Civ. 3972 (VB), 2016 WL 9503817, at *1 (S.D.N.Y. Apr. 18, 2016) (internal quotation omitted). These factors decisively disfavor a stay here.

***First***, Plaintiffs here have substantial interest in proceeding expeditiously with this litigation. This case is nearing its three-year anniversary, discovery is substantially advanced with HOP having produced over 1 million documents, and the parties are on the precipice of litigating

5

class certification. There is also a clear and established path for Plaintiffs to secure substantial class-wide relief. There is ample precedent for certifying the claims Plaintiffs bring here,[3] and the record evidence strongly suggests Plaintiffs will prevail on the merits. Joint Decl. ¶ 4. Recognizing this, HOP seeks to use a weak case being litigated by a plaintiff's lawyer that has never helmed a class action to extinguish this completely separate litigation. Joint Decl. ¶ 5.

The record here is thus on all fours with *Dalchau v. Fastaff, LLC*, No. 17 Civ. 1584 (WHO), 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018). Like here, the *Dalchau* defendant sought a stay of a federal case so that it could complete a reverse auction in a separate state court case. In refusing the stay, the *Dalchau* court first observed that, as here, "[n]othing in the record indicates that [the state case] has vigorously litigated the classwide claims in the course of the state court proceedings." *Id.* at *4. The court next noted that the defendant's argument of hardship in continuing to litigate was wholly insufficient. *Id.* at *5.

Then, the court rejected the stay motion because it would only further a collusive class action settlement:

> The [other court's] settlement and the way in which it came about plausibly reflect an attempt on the part of [defendant] to undercut [plaintiff] in the instant action. . . . Indeed, circumstances suggest that [the other plaintiff's] addition of classwide causes of action occurred at the behest of [defendant] to escape potential liability here. The timing of the settlement and conduct of the [other] parties are enough to indicate "a fair possibility that the stay . . . will work to damage [plaintiff]." *See Landis*, 299 U.S. at 255.

*Id.* at *4.

---

[3] The legal theory in *Melville* and *Mullaney* has been successfully deployed numerous times in contested class certification rulings, most recently in the undersigned's litigation *Mirkin v. XOOM Energy, LLC*, No. 18 Civ. 2949 (ARR) (RER), 2023 WL 5622099, at *5 (E.D.N.Y. Aug. 31, 2023), a case that involves the exact same cost-based contract construction Judge Karas adopted in his *Melville* dismissal ruling, *see* ECF No. 24 at 16–17.

6

So too here, a stay will "work damage to" Plaintiffs in the *Melville* and *Mullaney* cases who are in the midst of robust discovery efforts and intend to continue prosecuting their claims.

By contrast, there has been little discovery in *Callery*, and when Callery and HOP reached their collusive agreement, the operative *Callery* complaint only alleged a Pennsylvania class and an impermissible opt-in class, meaning Callery ***had never even pleaded a class that could purport to fully encompass the Melville and Mullaney Classes***. To cure this, and no doubt in collusion with HOP, Callery amended his complaint on July 16 to purportedly include the *Melville* and *Mullaney* Classes. This ex-post move occurred one day ***after*** his settlement agreement was signed, seven weeks ***after*** the reverse auction settlement was reached in principle, and, remarkably, only ***after*** filing his preliminary approval papers. *Compare* Ex. D (*Callery* Amended Complaint filed on July 16, 2024), *with* ECF No. 136-1, Ex. A, Declaration of *Callery*'s Counsel in Support of Preliminary Approval, ¶ 15 (agreement in principle reached at a secret mediation on June 6, 2024), *and* ECF No. 136-1, Ex. 1, *Callery* Settlement Agreement (signed July 15, 2024). The similarity to *Dalchau* is thus striking and should be persuasive to this Court's analysis.[4]

***Second***, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255). Further, courts deny stays where it is not clear if the entirety of the claims would be released. *See Torliatt v. Ocwen Loan Servicing, LLC*, No. 19 Civ. 4303 (WHO), 2020 WL 10964876, at *4 (N.D. Cal. Oct. 2, 2020) (denying stay of competing class action where

---

[4] *See also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (explaining that the court could not ignore "the perception . . . that [defendant] selected counsel confronted with a most precarious position, [and] insisted upon amendments to the pleading to broaden the scope of this litigation to obtain a global peace."); *Claridge v. N. Am. Power & Gas, LLC*, No. 15 Civ. 1261 (PKC), 2017 WL 3638455, at *1 (S.D.N.Y. Aug. 23, 2017) (rejecting class action settlement in energy billing litigation where "[t]he proposed settlement dramatically expands the class definition from a New York-only class to a class that includes all ratepayers across the nation.").

7

settlement in other case did not subsume entirety of class and was being challenged by counsel); *see also La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. 09 Civ. 3529 (JSW) (LB), 2012 WL 5519199, at *4 (N.D. Cal. Nov. 14, 2012) (denying stay where the settlement was only tentative); *Keystone Coke Co. v. Pasquale*, No. 97 Civ. 6074, 1999 WL 126917, at *4 (E.D. Pa. Mar. 9, 1999) (denying stay pending settlement in a related matter where "the settlement and its terms remain speculative" and where "even if executed and approved, the agreement may not dispose of all claims" in the case).

Given the clear shortcomings of the *Callery* settlement, including that it was negotiated without Interim Class Counsel, there is no guarantee the *Callery* settlement will achieve finality. Plaintiffs should thus not be forced to wait idly by while another court makes this determination, and any potential appeals are resolved.

Moreover, even if the *Callery* settlement were approved in its current form, this litigation would not end. Judge Karas already ruled that *Callery* does not present identical or substantially similar parties and claims. Accordingly, the *Callery* plaintiff cannot adequately represent the *Melville* and *Mullaney* Classes, and thus even an approved *Callery* settlement will not have preclusive effect here. *See Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 171 (2d Cir. 2006) (Supreme Court has long held "not only that due process requires fair representation of absent parties (ultimately called 'adequate' representation), but also that an absent party denied such representation could collaterally attack the class action judgment."); *see also Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 19 (2d Cir. 1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 90 (E.D.N.Y. 2007) (eligible class

8

members may not "bargain away the rights of other Class Members to assert legal claims unrelated to the present action . . . for the sake of the eligible Class Members' own pecuniary interests").

Here, Callery's eleventh-hour effort to expand his case will have no preclusive effect. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 234 (2d Cir. 2016) ("As the Supreme Court recognized . . . when 'the potential for gigantic fees' is within counsel's grasp for representation of one group of plaintiffs, but only if counsel resolves another group of plaintiffs' claims, a court cannot assume class counsel adequately represented the latter group's interests."). In short, the second relevant stay factor does not counsel a stay here.

**Third**, the courts have a strong interest in denying the stay. HOP has continually violated the Court's Orders. Indeed, at the last conference, defense counsel sheepishly admitted that HOP did not even attempt to comply with the ICC Order. *See* Ex. E, July 17, 2024 Hr'g Tr. 22:6–7 ("So, no, there was not an attempt to carve [*Melville* and *Mullaney*] out . . . ."). HOP claims in its brief that the ICC Order is effectively meaningless because it does not include the magic words "sole authority to conduct settlement negotiations." Def.'s Br. at 4. However, HOP's counsel has already admitted that it understood that the very purpose of the interim class counsel motion was to establish that the undersigned would have sole authority over the *Melville* and *Mullaney* cases. Ex. E at 13:16–22; *see also* ICC Order at 3 ("Thus, this Court finds that it would protect the putative classes in *Melville* and *Mullaney* to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving *Callery*.").

Courts have a strong interest in securing compliance with their orders, and a stay would only countenance HOP's overt violation of the ICC Order. Similarly, the law of the case doctrine furthers the courts' interest in avoiding serial relitigation of settled issues. *See Johnson*, 564 F.3d at 99. Accordingly, the Court has a strong interest in denying HOP's stay request.

9

*Fourth*, non-parties also have an interest in denial of the stay. In general, "the interests of non-parties and the public favors prompt resolution of the civil case." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 580 (S.D.N.Y. 2001).

*Fifth*, a stay is decidedly not in the public's interest. A stay would reward HOP's improper conduct and would undermine public confidence in court orders. HOP understood both Judge Karas's and Your Honor's orders, but has (mis)calculated that ignoring them could potentially inure to its benefit. The Court should make clear to all litigants that such tactics will not pay off.

Finally, HOP's cases do not counsel a different result. The many cases HOP cites on pages 6 and 7 of its brief (and repeated throughout)—for the proposition that courts often stay the class actions pending before them when a settlement is reached in a different class action—are inapposite because *none* of those cases involved interim class counsel orders that expressly sought to protect a proposed class from an open reverse auction threat.

HOP knows there is no case law supporting a stay request on a record similar to the one at bar, so HOP cites two cases where interim counsel had been previously appointed and suggests that an interim counsel order cannot prevent a defendant from selling to the lowest bidder. Def.'s Br. at 9. Both of HOP's citations are misleading.

HOP's cited portion of *HSBC Bank* pertains to whether an exception to the Anti-Injunction Act allowed a federal court to enjoin a state court proceeding. *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 310 (E.D.N.Y. 2015). The Anti-Injunction Act is entirely irrelevant here because *Callery* is pending in federal court (despite Callery's two unsuccessful attempts to get back to state court). Similarly, HOP cites *Barnes v. Wells Fargo Bank, N.A.*, No. 18 Civ. 6520 (JCS) (N.D. Cal. Jan. 25, 2019), ECF No. 25, for the misleading proposition that the *Barnes* court issued a stay after the defendant reached settlement in another case despite

the appointment of interim class counsel. Def.'s Br. at 9. However, HOP conveniently omits that the stay in that case was entered **with the consent of interim class counsel**. *Barnes*, No. 18 Civ. 6520 (JCS), ECF No. 25 at 1 ("Plaintiff agrees to stay *Barnes* pending settlement approval proceedings in [the other case.]").

HOP's remaining citations do not even touch on issues specific to class actions, and instead deal more generally with stay applications in inapposite contexts. *See, e.g.*, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 297 (S.D.N.Y. 2009) (granting stay while appellate court determined controlling issue of law); *J.W. v. Pfizer, Inc.*, No. 13 Civ. 318 (YGR), 2013 WL 1402962, at *4 (N.D. Cal. Apr. 5, 2013) (stay issued pending order of the JPML in an MDL proceeding). In short, **none** of HOP's cases are on point and in none of those did the settling defendant violate an express provision of an interim class counsel order.

More than 40 years ago, the Second Circuit charged district courts overseeing proposed class actions "to act as a fiduciary [and] serve as a guardian of the rights of absent class members." *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1099 (2d Cir. 1977). This requires the Court to "exercise its independent judgment to protect the interests of class absentees," *In re Traffic Exec. Ass'n–E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980), and to faithfully discharge its "duty" to "exercise control over [the] class action and to enter appropriate orders governing the conduct of counsel and parties," *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981). *See also Scheffer v. Civ. Serv. Emps. Ass'n, Local 828*, No. 05 Civ. 6700 (MAT), 2006 WL 7066914, at *7 (W.D.N.Y. Oct. 24, 2006) ("district court acts as fiduciary who must serve as guardian of rights of absent class members even prior to certification"); *Runion v. U.S. Shelter,* 98 F.R.D. 313, 318 (D.S.C. 1983) ("Although no class has been certified, this court accepts its fiduciary responsibilities at this stage of the litigation. Absent class members have substantial due process rights that are being affected

11

. . . even though a class has not been certified."). Similarly, under Fed. R. Civ. P. 23(e), this Court is obligated to "protect[] unnamed class members from unjust or unfair settlements affecting their rights." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). This "responsibility," however, is "difficult to discharge when the judge confronts a phalanx of colluding counsel." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008). This Court should exercise its fiduciary responsibility to protect the *Melville* and *Mullaney* Classes and deny HOP's motion to stay of this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny HOP's motion to stay this litigation pending approval of the settlement in *Callery*.

Dated: August 1, 2024

Respectfully submitted,

**WITTELS MCINTURFF PALIKOVIC**

By:   /s/ J. Burkett McInturff
J. Burkett McInturff (JM-4564)
Daniel J. Brenner (No. 5675198)
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
djb@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub (No. 237708)
Samantha E. Holbrook*
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
CONSHOHOCKEN, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

*Admitted Pro Hac Vice