# Exhibit C

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  RYAN MELVILLE, on behalf of himself
    and all others similarly situated,
 4
                            Plaintiff,
 5                                              21 CV 10406(KMK)(VR)
         -vs-                                   TELECONFERENCE
 6
    HOP ENERGY, LLC,
 7
                            Defendant.
 8  ---------------------------------------x
    MICHELLE MULLANEY and ROBERT MULLANEY,
 9  on behalf of themselves and all others
    similarly situated,
10                                              23 CV 7318(KMK)(VR)
                            Plaintiffs,
11       -vs-
12  HOP ENERGY, LLC,
13                          Defendant.
    ---------------------------------------x
14
                            United States Courthouse
15                          White Plains, New York
                            January 9, 2024
16
    Before, THE HONORABLE VICTORIA REZNIK, Magistrate Judge
17
    A P P E A R A N C E S :
18
    WITTELS McINTURFF PALIKOVIC
19       Attorneys for Plaintiff
         18 Half Mile Road
20       Armonk, New York 10504
    BY:  J. BURKETT McINTURFF
21  --and--
    SHUB & JOHNS, LLC
22       Attorneys for Plaintiff
         Four Tower Bridge
23       200 Barr Harbor Drive, Suite 400
         West Conshohocken, Pennsylvania 19428
24  BY:  SAMANTHA E. HOLBROOK
         JONATHAN SHUB
25  *Proceedings recorded via digital recording device*
```

```
 1  A P P E A R A N C E S:  (CONT.)

 2  NIXON PEABODY, LLP
          Attorneys for Defendant
 3        Exchange Place
          53 State Street
 4        Boston, Massachusetts 02109-2835
    MATTHEW T. McLAUGHLIN
 5  KEVIN SAUNDERS

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           THE COURT:  This is the Melville and, I guess,

2 Mullaney case.

3           Will counsel please introduce themselves, starting

4 with the plaintiff?

5           MR. McINTURFF:  Good morning, Your Honor.  This is

6 Burkett McInturff on behalf of plaintiffs and the proposed

7 classes in both the Melville and Mullaney cases, and I have with

8 me my colleagues, Jonathan Shub and Samantha Holbrook, from the

9 Shub & Johns firm as well.

10          THE COURT:  Okay.

11          MR. SHUB:  Good morning, Your Honor.

12          MS. HOLBROOK:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          And for the defendants?

15          MR. McLAUGHLIN:  Good morning, Your Honor.  It's Matt

16 McLaughlin with Kevin Saunders on behalf of HOP Energy.

17          THE COURT:  All right.  So we are here today to

18 discuss plaintiffs' request for a briefing schedule on a motion

19 to be appointed interim class counsel.  I read the parties'

20 submissions, so I will start with the plaintiff and give you an

21 opportunity to explain to me why you think this is necessary at

22 this point in time in the cases.

23          MR. McINTURFF:  Sure, Your Honor.  This is Burkett

24 McInturff.  We are here to ensure that the classes in our two

25 cases are protected.  It's really that simple.  It's in the

1  classes' interest in both cases to have counsel that's appointed

2  to protect them and authorized to litigate on their behalf in

3  the pre-certification period.  Appointing interim class counsel

4  isn't any prejudice to HOP whatsoever, and the case law is clear

5  that appointing counsel is a valuable and established case

6  management tool.

7          Now, we filed our letter because after we agreed to do

8  a mediation with HOP, HOP start mischaracterizing our cases as

9  being subsumed within a narrower case pending in Pennsylvania

10 that's called the Callery case.  But Judge Karas in May 2023,

11 before we agreed to mediate, had already ruled that Callery is

12 focused on a different HOP product than our case.  Callery is

13 also limited to Pennsylvania.  But despite Judge Karas's ruling,

14 once we started to discuss in mediation, HOP claimed on the

15 record at the October 31 and November 29 conferences before Your

16 Honor that our cases were somehow subsumed by Callery.

17         Now, that is a direct threat to the classes'

18 interests, Your Honor, because that is sending a clear message

19 to us that if we don't agree to settle on the defendant's terms,

20 then it can settle these cases out from under us, and the class

21 has no interest in being subjected to threats like that.

22 Instead, it's the opposite.  The classes' interest is in having

23 counsel that is appointed to maximize the value that can be

24 obtained for the class, and appointing interim class counsel is

25 the mechanism to do that.

 1          We wrote in our letter that courts have an independent

 2  and pre-certification duty to protect the class interests.

 3  Considering the HOP's mischaracterizations about our case being

 4  subsumed, which again, were made on the eve of settlement talks,

 5  the classes in the cases now need the Court's protection.  I

 6  think this -- this is really important.  HOP refuses to commit

 7  to not trying to settle any part of these cases with the

 8  settlement in Callery.  If defense counsel would state on the

 9  record today that HOP will not try to extinguish any part of

10  these cases via a settlement in Callery, then we don't have an

11  issue.  But defense counsel won't do that, and that makes our

12  point.  That's why interim class counsel is necessary because

13  there is a direct threat to the class.

14          Now, HOP's letter says we haven't presented any

15  evidence that HOP is suggesting it can settle this case in

16  Callery, but respectfully, that is not true.  Our evidence is

17  their two-time mischaracterization on the record that our cases

18  are subsumed by the Callery case.

19          Further, HOP's conduct is evidence that calls for

20  appointing interim class counsel.  HOP has ignored Judge Karas's

21  ruling that Callery is about capped price customers.  It's a

22  totally different product than the product challenged in our

23  cases.  Our cases are about variable rate customers.  And the

24  cases don't overlap.  So HOP can settle Callery.  We are not

25  objecting to HOP settling Callery.  What we are trying to do

1  with our interim class counsel motion is just make it -- make it

2  clear that HOP can't settle our cases when it settles -- if and

3  when it settles Callery.

4          Now, HOP said in their letter that we are doing --

5  that we are moving for interim class counsel for some tactical

6  advantage over counsel in Callery, but that's not true.  HOP

7  doesn't want the Court to appoint interim class counsel so that

8  it will have the tactical advantage as it does now.  Because at

9  this point, it can try to offer a settlement to the lowest

10  bidder, and as long as there is no clear delineation between who

11  is responsible to negotiate on behalf of the classes in each

12  case, HOP can always threaten to cater to the lowest bidder, and

13  that -- again, that jeopardizes the classes' interest.

14          So, you know, finally, we are working with counsel for

15  Callery to achieve a global resolution.  We are in active talks

16  in mediation, but Callery is a different case focused on a

17  different product and is limited to Pennsylvania; and there is

18  no guarantee that the interests -- there is no guarantee that

19  the interests of the cases will always be aligned.  And so the

20  law is clear, the case law is clear, when there's a potential

21  for a conflict, even if it's not realized, it's the best

22  practice to appoint interim class counsel.  The cases we cited

23  in our letter spell this out, and we think it's very reasonable,

24  and it's the right time in the case for the Court to weigh in on

25  the interim class counsel.  So we would like to file our motion,

1  or if the Court wants to rule on our letter as filed, that's

2  fine as well, but we think it's critical for both continued

3  settlement and litigation that the Court appoint interim class

4  counsel.

5         THE COURT:  Okay.  And, Mr. McInturff, if -- how is

6  it -- explain to me if you are pointed interim class counsel,

7  how would that allow you to stave off what you see as HOP's

8  efforts to extinguish the class members' claims by settling

9  Callery if, according to Judge Karas, the claims and rights

10  raised in Callery will differ substantially?  What role would

11  being interim class counsel provide you?

12         MR. McINTURFF:  So the role of interim class counsel

13  authorizes and designates class counsel as the sole negotiating

14  party for the interests of that class.  So it's essentially an

15  order saying that no other counsel has authority to settle out

16  the class.

17         THE COURT:  And would the -- looking at the Callery

18  case, I was looking at the complaint that you attached, would

19  you be asking to be interim class counsel for a subset of the

20  class that Callery sets forth in its complaint?

21         MR. McINTURFF:  Well, so the Callery class is -- in

22  terms of what is operable in law -- is limited to Pennsylvania,

23  and the facts in Callery are limited to capped price customer.

24  We are not trying to settle any capped price customers.  So

25  effectively, the answer is no.  We can't -- we can't say

1  definitively that it's no because of the way the cases were

2  pled, you know, but again, these pleadings are pleadings, and

3  they are pled before we had discovery; but based on Judge

4  Karas's ruling that the Callery case is a capped price case, we

5  have no intention of settling a capped price claim, and

6  certainly Callery can't extend beyond Pennsylvania.

7        THE COURT:  Well, that's what I was trying to

8  understand because I see the Pennsylvania complaint.  I don't

9  know what the status is of what their -- what their class

10 includes now or how it's changed, if at all.  It appears that

11 recently they pled it was that it included all persons who

12 entered into contracts with defendants under terms, including a

13 cap pricing program and/or a prevailing retail price, which I

14 think would include the claims in your case.

15        And I understand that they included this opt-in

16 provision, which I guess was okay under Pennsylvania law, but I

17 don't know where that stands, whether they are still seeking to

18 include a class of non -- you know, people outside of

19 Pennsylvania as part of that class.

20        Do you know the answer to that?

21        MR. McINTURFF:  Well, I can tell you that on the

22 docket, Your Honor, that they haven't amended the complaint, and

23 no class certification motion has been filed in that case.  So

24 the operative pleading is the one that was attached to our

25 claims, and they lost -- they spent close to two years trying to

1  get the case remanded to the state court in Pennsylvania, and

2  they lost the remand motion.  So the case is staying in federal

3  court.

4         So, again, to the extent that there is some small

5  overlap, if any, in the cases, I don't think that that --

6  counsel's against appointing interim class counsel because the

7  point of interim class counsel is to prevent the -- essentially,

8  one case from swallowing another, and there is no threat here on

9  either side that one case swallows the other.  Because, again,

10 Judge Karas has ruled that our case is a variable rate case and

11 that Callery is a capped price case.  I'm stating on the record

12 that we are not attempting to settle any capped price customers,

13 so we can't swallow their case.  And what we are trying to

14 prevent is the defendant from attempting to use the settlement

15 in Callery to swallow our two variable rate cases.

16        THE COURT:  Understood.  And that's because -- at

17 least the way it's pled -- the Callery class action allegations

18 include prevailing retail price contracts as well.

19        MR. McINTURFF:  Well, it's pled to include prevailing

20 retail prices, but it's not so much because the way it's pled,

21 because -- because the way it's pled includes only Pennsylvania

22 customers because it says if you are outside of Pennsylvania,

23 you have got to opt in, which is impossible in federal court.

24 So the way -- it's not -- the problem is not the way it's pled.

25 The problem is the defendant's characterization of the case in

1  light of Judge Karas's ruling.  And, again, this threat of this,

2  you know, very not-so-implicit threat that our case is subsumed.

3  Defense counsel stated twice on the record that the case is

4  subsumed and -- which means again defense counsel believes that

5  it can settle Callery and claim that our case has been settled.

6  I think -- again, I think the right term is "swallowed."  Like

7  defense counsel claims that Callery subsumes our case, which it

8  clearly does not, and it's very concerning to us that they would

9  suggest as much because, yes, the class definition includes a

10 reference to prevailing prices, but it's limited to

11 Pennsylvania, and our Court has looked at -- if Your Honor will

12 recall, the defendant moved to stay the case, our Court has

13 looked at both cases, and Judge Karas ruled very clearly that

14 Callery is about capped price customers.  We are pursuing

15 consumers' rights under purchasing a completely different

16 product.  And --

17            THE COURT:  No, I understand that.  When I was looking

18 at the case law relating to interim class counsel, typically the

19 question is:  Are the cases overlapping, duplicative, competing

20 in some way?  And I think your view is they are not, except that

21 defendants characterize them as being such.  So I was trying to

22 understand that if you are -- if you become interim class

23 counsel, you would be interim class counsel for the class that

24 you have proposed, which arguably isn't -- which is arguably

25 different than the Callery --

1          MR. McINTURFF:  Correct.

2          THE COURT:  -- class.

3          MR. McINTURFF:  That's correct.

4          THE COURT:  I wanted to understand.  Okay.  So turning

5     to defendants, then.

6          MR. McLAUGHLIN:  Thank you, Your Honor.  So, I mean, I

7     just at the outset, I absolutely deny that I have made any sort

8     of threat or improperly characterized the Callery case.  I

9     literally I think have only said precisely what Your Honor just

10    did a moment ago, which is, read the definition of the proposed

11    class from Callery, which as Your Honor just indicated, is not

12    limited to -- as I read it -- capped customers.  It includes

13    capped customers, but there has been no class that has been

14    certified in Callery or, obviously, either of these cases.  So I

15    don't have a position on what those -- all I am doing is reading

16    what the allegations are, and that was the sum total of what I

17    indicated when I said that, as pled, the definition of the class

18    is much broader than what Mr. McInturff has viewed as the

19    proposed definition of the class, but no class has been

20    certified in either case.

21          To the -- and this idea that we are -- we are using or

22    trying to achieve some tactical advantage here by offering to

23    settle to the lowest bidder, again, the only settlement

24    discussions that we have had are in connection with the ongoing

25    mediation that is a global mediation that was requested -- that

1   we have scheduled with Callery, and then Mr. McInturff requested

2   to join.

3          So we have been acting consistently throughout.  This

4   has been presented as an attempted global resolution.  As far as

5   I know, everybody is still participating, and so the only -- as

6   we said in our letter -- the only seeming tactical advantage

7   with this request would flow to plaintiffs' counsel in the New

8   York case.  I don't know what Callery's counsel's position is on

9   interim class counsel.  My sense is that this was not a joint

10  request since nothing was filed with respect to this in Callery;

11  but this -- to your point, Your Honor, if these are not

12  competing actions as far as plaintiffs in this case are

13  concerned, then there is no need to appoint interim class

14  counsel.  If they -- if the goal is to ultimately try to resolve

15  these cases on a global basis, which is certainly the

16  defendant's goal, then this is -- this is simply not necessary

17  to resolve at this stage of the case.

18         THE COURT:  So what is your response to

19  Mr. McInturff's point that you aren't willing to state that your

20  -- well, his concern is that you will separately settle Callery,

21  which -- and will argue that that subsumes or swallows Melville

22  and Mullaney so that it's settled out from underneath them, and

23  that you haven't been willing to say that that's not what's

24  happening; that you are not intending to do that.

25         So is there -- is that correct; that you are not

1  willing to state -- go that far?

2          MR. McLAUGHLIN:  I don't believe I have -- I don't

3  believe Mr. McInturff has ever asked me that question.  The

4  first I heard about a request for commitment was two minutes ago

5  on this conference call.

6          THE COURT:  Okay.

7          MR. McLAUGHLIN:  So --

8          THE COURT:  So, Mr. McInturff, what is the question

9  you want to pose to Mr. McLaughlin?  Can you repeat that

10 question?

11         MR. McINTURFF:  Yes.

12         Will you agree not to settle out any aspect of the

13 Melville or Mullaney cases in Callery?  And for the record, that

14 has been asked before.

15         THE COURT:  So, Mr. McLaughlin, do you have an answer

16 to that question?

17         MR. McLAUGHLIN:  I don't because I don't know --

18 because it really -- because I think if you -- but again, I

19 haven't had this conversation specifically with plaintiffs'

20 counsel in Callery, but I believe plaintiffs' counsel in Callery

21 understands their proposed class to be consistent with what Your

22 Honor read from the complaint, which would have overlapped with

23 any -- with at least the proposed classes in Mullaney; maybe not

24 Melville because Melville's proposed class is limited to --

25 well, I think it probably still would potentially with

1  Melville -- but Melville's proposed class is limited to the

2  customers that have the first year promotional retail price

3  language.

4          So no, I can't -- I can't commit to that because --

5  but I haven't had any settlement discussions specifically with

6  plaintiffs' counsel from Callery, but that's -- that is not

7  unusual for -- if there are competing -- if there are, which

8  Mr. McInturff doesn't believe they are competing class actions,

9  but for a proposed settlement to define what the class is.  And

10 I don't think it would be appropriate for us to limit that at

11 this stage when we haven't even agreed on a settlement or

12 discussed a settlement with plaintiffs.

13         THE COURT:  Right.  But I guess --

14         MR. McLAUGHLIN:  This --

15         (Cross-talk)

16         THE COURT:  But right, no, I understand your position,

17 Mr. McLaughlin, and I guess I understand, though, why that gives

18 Mr. McInturff pause because to the extent your view -- and the

19 plaintiffs' view in Callery -- is that their class action is

20 broad enough to subsume at least some members of the class in

21 Melville and Mullaney, then there is a risk that you could go

22 off and settle Callery with the plaintiffs in a way that would

23 undercut the class in Melville and Mullaney and without their

24 involvement.  And it sounds like you are not willing to say --

25 you are not willing to disagree with that because you don't want

1  to box in your position, which I understand, but I think that's

2  where it sounds like the problem lies.

3            Am I -- is that correct, Mr. McInturff?

4            MR. McINTURFF:  That's correct, Your Honor.

5            THE COURT:  Okay.  So, I mean --

6            MR. McLAUGHLIN:  Your Honor, I would just --

7            (Cross-talk)

8            THE COURT:  Mr. McLaughlin, what addresses that

9  concern for Mr. McInturff?  How can we be sure that you and --

10 that HOP and Callery have an expansive view of the class such

11 that it subsumes part of Melville and Mullaney, that that gets

12 settled, not as part of this global settlement where everybody

13 is involved equally and has a part of the conversation, but in

14 some backroom negotiations where then their claims are undercut?

15 How do we address that from your perspective, if not for

16 appointing interim class counsel?

17           MR. McLAUGHLIN:  Your Honor, I think -- and the cases

18 that we cited in our response deal with that issue exactly.

19 It's the -- there is a process built into Rule 23.  If -- if we

20 were to reach a settlement in a different case that

21 Mr. McInturff believed was not an appropriate settlement, he has

22 all of the tools under Rule 23 to object to or opt out of, or

23 otherwise weigh in on, any proposed settlement.  That's all

24 aired out in public in that court, and so there is -- there are

25 built-in safeguards to any settlement that is proposed on behalf

```
 1  of a class that --
 2              THE COURT:  Okay.
 3              MR. McLAUGHLIN:  -- would be available to them in this
 4  case.  Just like --
 5              THE COURT:  Mr. McInturff -- okay.
 6              (Cross-talk)
 7              MR. McLAUGHLIN:  -- if we were to settle in -- just
 8  like if we were to settle with the plaintiffs in these cases
 9  the -- to the extent the plaintiffs in Callery view that as
10  somehow inconsistent with their proposed class or the settlement
11  they want, they could air those grievances in this court.
12              So it's the exact same safeguards that both counsel
13  have.  I think appointing interim class counsel now,
14  particularly given the current posture of ongoing global
15  negotiations, would only unfairly benefit Mr. McInturff and his
16  firm.
17              THE COURT:  In what way would it benefit -- would it
18  be unfairly benefiting Mr. McInturff and his firm in your view?
19              MR. McLAUGHLIN:  Because it would -- because it would
20  essentially prevent the plaintiffs in the Callery case from
21  engaging in the ongoing mediation.  So we have a separate case
22  that is continuing that -- that -- and the counsel in that case
23  wouldn't be permitted to, as far as I understand the request,
24  wouldn't be permitted to engage in some written negotiations
25  with us and the mediator in connection with -- with the
```

1  potential global resolution.  So it would -- it would --

2          (Cross-talk)

3          THE COURT:  Is that your intent to --

4          (Cross-talk)

5          MR. McLAUGHLIN:  -- power to --

6          MR. McINTURFF:  Totally not.

7          THE COURT:  Mr. McLaughlin, I am sorry.  Yeah, I

8  just -- Mr. McInturff, so is that your intention?  So --

9          MR. McINTURFF:  No.  No.  Without a doubt.  I mean,

10 that's absurd.  What we are trying to do is delineate the

11 different areas of responsibility and avoid the defendant being

12 able to suggest that it can go to the lowest bidder, which is

13 exactly what Mr. McLaughlin just did.

14         And this notion that there is some sort of process

15 built into Rule 23, first of all, if that were adequate, there

16 would be no such thing as interim class counsel; and second,

17 that's not how it -- how it operates in the real world.  In the

18 real world what the defendant does is tries to pit various cases

19 against each other to get the parties to go to the lowest

20 bidder, and then as soon as they can -- they find the lowest

21 settlement, they move to stay the other cases.  Then they

22 self-impose a stay, and it upends the litigation.

23         I have had this happen in another energy case before

24 Judge Underhill in the District of Connecticut, and what he did

25 in that scenario, because he saw it coming, was he -- once the

1  party had agreed to a settlement that was -- that was to the

2  lowest bidder, he said, great, that's what you guys think you

3  can get.  We are going to stay the settled case, and we are

4  going to let the cases that are litigating go forward and see if

5  they can maximize the value to the class because the purpose

6  here is to make sure that the class has an agent in each -- in

7  each instance has an agent that is going to maximize its value;

8  and, frankly, the idea that defendant is concerned about

9  maximizing the value to the class is this fox guarding the

10 henhouse.

11        This is -- we are not trying to settle Callery.  We

12 are not trying to settle any part of Callery.  Callery is a

13 capped price case.  Judge Karas ruled that it was a capped price

14 case.  This is simple.  And the fact that Mr. McLaughlin can't

15 agree that it won't settle any part of our case out just shows

16 what's actually going on here, Your Honor.

17        THE COURT:  So how -- have you spoken with the Callery

18 plaintiffs about this, Mr. McInturff?  What's their -- do they

19 understand your concerns and what you are trying to do?  And I

20 mean --

21        (Cross-talk)

22        MR. McINTURFF:  We are working cooperatively with

23 counsel for Callery in the global mediation, but we are -- what

24 we have been concerned about is the defendant's approach to the

25 Callery case.  We haven't -- we don't have any indicia that

1  counsel for Callery is interested in settling our case out, but

2  it's the defendant's comments on the record that are concerning

3  to us.

4          THE COURT:  And in your view -- you keep referring to

5  Judge Karas's decision that Callery is a capped price case.  Do

6  you have an indication that Callery plaintiffs see it that way

7  as well? that that's a capped price case, and it doesn't include

8  prevailing -- the prevailing rates so that it would overlap with

9  the claims you are bringing?

10         MR. McINTURFF:  I don't know the answer to that, Your

11 Honor.

12         THE COURT:  Okay.  And so in what stage of discovery

13 is Callery in at this point?  Do you know?

14         MR. McINTURFF:  My understanding is -- well, it's --

15 the case -- the cases were -- started merits discovery around

16 the same time as Melville.  Mr. McLaughlin is counsel in

17 Callery, so he can maybe answer that better than me.

18         THE COURT:  Okay.  Do you know, Mr. McLaughlin?  Yeah?

19          (Cross-talk)

20         MR. McLAUGHLIN:  We are engaged.  We have exchanged

21 written discovery.  There was -- there was -- there was

22 (inaudible) before I got involved in the case because, as you

23 may recall, we took over in this case, as well as in Callery

24 this summer.  There was jurisdictional discovery that had taken

25 place, but the substantive merits discovery I agree only started

1    shortly before it did in this case.  We -- the scheduling order

2    provided the discovery was to be complete by now.  We've been

3    working with the discovery master that's been appointed in that

4    case to hopefully revise the dates once -- you know, if and when

5    the mediation talks fail, but we don't have a current new

6    scheduling order in Callery for discovery to be concluded.

7         THE COURT:  And with respect to mediation, are there

8    more mediations scheduled, and are they scheduled to include all

9    three cases, Melville, Mullaney, and Callery?

10        MR. McLAUGHLIN:  We don't have another -- we agreed to

11   continue working with the mediator on a global basis to try to

12   reach resolution, and we have been doing that.  I have had -- I

13   spoke with the mediator as recently as late last week, so we are

14   continuing to, I think -- unless somebody tells me otherwise --

15   to pursue mediation.  We have provided some additional

16   information in connection with that, but as far as I understand,

17   we are still moving forward with a -- with a global resolution

18   if we can reach one.  That's still the -- I think, everybody's

19   goal.

20        THE COURT:  And from your perspective, do you view the

21   Callery case as overlapping or competing in any way with the

22   Melville and Mullaney cases?

23        MR. McLAUGHLIN:  Well, I do -- I mean, Your Honor, all

24   I can do is read the allegations in the complaint, and yes, my

25   understanding -- I mean, my understanding based on prior to the

1  mediations, frankly, was that Callery's counsel viewed their

2  class as -- as broader than what I think Mr. McInturff has

3  described it as.  I don't take a position on that because the

4  Court hasn't, you know, certified any class, but I am just

5  reading the words on the page of the complaint that, to me --

6           THE COURT:  Right.  And in Callery, is the discovery

7  -- what will the discovery entail?  The broader class action

8  allegations as we read them out loud here in this conference?

9  What is the basis --

10          MR. McLAUGHLIN:  Yes, we have produced --

11          (Cross-talk)

12          MR. McLAUGHLIN:  Yes, we have not -- I mean, we have

13 not limited -- and frankly, the discovery master has ordered us

14 to already, and we have produced discovery that extends beyond

15 Pennsylvania.  I understand -- I understand, again, I am not,

16 obviously, representing the plaintiffs, I understand the

17 complaint since it was filed in state court has -- you know, as

18 pleaded, has an opt-in for outside-of-Pennsylvania residents,

19 but that is a function of Pennsylvania state court procedure

20 that now that it's in federal court, I don't -- I have no idea

21 if the plaintiff is intending to file an amended complaint, but

22 it has certainly been litigated to date as a national class

23 action similar to Melville and Mullaney, and we have produced

24 discovery consistent with that.

25          THE COURT:  And including not just capped price, but

010924                          Proceedings

1  prevailing rate contracts?

2            MR. McLAUGHLIN:  Correct.

3            THE COURT:  And Mr. McInturff described Callery as

4  different also in that it was a fraud -- more of a fraud case

5  versus Melville and Mullaney as contract-based.  Do you agree

6  with that distinction or do you think there is also overlap in

7  the kinds of claims in Callery?

8            MR. McLAUGHLIN:  Well, it's true that there are

9  additional claims, including fraud claims, that exist in

10 Callery, but there are -- there is also a breach of contract

11 claim in that case as well.

12           THE COURT:  Okay.  All right.  So I guess I do have a

13 view already, but I think what I'd like to do is have the

14 parties move forward with a short briefing schedule on this

15 issue because I don't think all the issues in 23(g) have been

16 addressed in pre-motion letters that need to be addressed for

17 the Court to make a ruling.

18           So will the parties propose a briefing schedule?  Do

19 you want me to do one right now or do you have one in mind to

20 propose that we can agree upon?

21           MR. McINTURFF:  The parties haven't discussed a

22 briefing schedule, so we are happy to work it out with Your

23 Honor.

24           THE COURT:  Okay.  So let's do that here, then.  When

25 do you want to file your opening motion, Mr. McInturff?

```
 1            MR. McINTURFF:  So I've got -- I've got a brief due in
 2    the Ninth Circuit next Friday that's taking up a lot of our
 3    time.  Maybe Thursday, January 25th?
 4            THE COURT:  Okay.  And, Mr. McLaughlin, how much time
 5    do you want to respond or do you need?
 6            MR. McLAUGHLIN:  Your Honor, if I could have -- I'm
 7    just trying to see -- if I could have two weeks until the 8th?
 8            THE COURT:  Okay.  And will the timing of this affect
 9    any of the ongoing discovery deadlines that you have in your
10    cases or mediations, for example?  Because I wouldn't want that
11    to hold up the timing of anything.
12            MR. McINTURFF:  No.  No.  It won't.
13            MR. McLAUGHLIN:  Not from the defendant's perspective.
14            THE COURT:  Not from your perspective, either,
15    Mr. McLaughlin?
16            MR. McLAUGHLIN:  No, Your Honor.
17            THE COURT:  Okay.  Okay.  Great.  So then -- so
18    January 25th is the opening motion; February 8th opposition.
19    And I guess if you want to reply, I can give one to you,
20    Mr. McInturff.  But you don't have to have one if you don't want
21    one.  It's up to you.
22            MR. McINTURFF:  Okay.  Maybe the 22nd?
23            THE COURT:  Okay.  Okay.  And I guess, Mr. McInturff,
24    if you need longer than what you proposed -- you said two weeks,
25    and Mr. McInturff is giving himself that much time just for a
```

1  reply so I leave it open --

2          (Cross-talk)

3          MR. McINTURFF:  You know, I think I can do less.  I

4  can do less on the reply.  I don't need that much.  How about

5  the 15th?

6          THE COURT:  Okay.

7          MR. McINTURFF:  Just a week.  You know, we don't need

8  two weeks.

9          THE COURT:  Just -- so Mr. McLaughlin, are you still

10 happy with the two weeks?

11         MR. McLAUGHLIN:  Yes.  I think we can -- we can

12 still --

13         THE COURT:  You will get it done then.  Okay.  Great.

14         MR. McLAUGHLIN:  Okay.

15         THE COURT:  Wonderful.  So -- and then I will be able

16 to turn around an opinion soon after that.

17         Is there anything else that needs to be addressed

18 today?  I'm looking to see where we are in discovery.  Are the

19 Melville and Mullaney cases now going to be coordinated in terms

20 of discovery?  Mr. McInturff?

21         MR. McINTURFF:  So, well, we have been asking the

22 defendant to agree to consolidate the cases for many months, and

23 it's one of the issues outstanding that defendant has not gotten

24 back to us on.

25         THE COURT:  Okay.  But putting aside whether it's

1  officially consolidated, is there some agreement to just

2  coordinate discovery at the very least or is that not relevant?

3          MR. McINTURFF:  Well, we haven't discussed that

4  specific issue, but I -- I don't -- my sense from Mr. McLaughlin

5  is that that's not going to be a problem.  I mean, I know we are

6  certainly -- everybody -- it's all the same lawyers working on

7  both cases.

8          THE COURT:  Ah, okay.

9          MR. McINTURFF:  I don't see any issue.  I don't know

10 if Mr. McLaughlin sees an issue, but certainly not from our

11 perspective.

12         THE COURT:  Okay.  Mr. McLaughlin, is there an issue

13 with -- is there a CMP or case management plan already

14 established in Mullaney?

15         MR. McINTURFF:  There is not.

16         THE COURT:  Okay.  So you still need to do that?

17         MR. McINTURFF:  Yes.  We haven't had -- we had the

18 Rule 26(f) conference, but as far as I know, we haven't had the

19 initial conference or set a scheduling order.

20         THE COURT:  I see.  And did you get any indication

21 from Judge Karas that you would be doing that before him or no?

22         MR. McINTURFF:  All we've gotten thus far from Judge

23 Karas is the referral order.

24         THE COURT:  Okay.  And was that at your request or --

25         MR. McINTURFF:  No.

1              (Cross-talk)

2              THE COURT:  Okay.  I think the next -- so, and putting

3    that aside, what's the status of discovery in Melville?

4              MR. McINTURFF:  In Melville we are -- we -- the

5    defendant -- we proposed search terms.  The defendant has given

6    us a counterproposal.  There are several issues, ESI-related

7    issues that are still circling around.  As Your Honor knows, we

8    negotiated an ESI protocol.  No real document production has

9    occurred.  There's been no substantial data production with the

10   charging data.  We still need documents.  And no depositions

11   have occurred.  We are -- we have a status letter due on Friday.

12   We are going to raise a few issues, one of which is this

13   continuing issue about identifying the contracts that apply to

14   which customers.

15             THE COURT:  No.  Don't tell me that.

16             MR. McINTURFF:  I know.  I know.

17             (Cross-talk)

18             THE COURT:  Okay.  All right.  It's a never-ending

19   issue with you all.  Okay.

20             MR. McINTURFF:  Yes.  And so, you know, discovery is

21   underway.

22             In terms of Melville, so Your Honor is aware, we

23   issued written discovery requests, and we just got the

24   defendant's responses this week.  And so --

25             MR. McLAUGHLIN:  Mullaney.

1                MR. McINTURFF:  Sorry.  Mullaney.  Thank you.

2                THE COURT:  Okay.  So, well, I guess I'm jumping the

3    gun if I have a joint status letter due from you soon.

4                In Mullaney it sounds like the parties should meet and

5    confer and propose a case management plan and submit that to the

6    Court.  I guess I will confer and ask Judge Karas if that's

7    something he wanted to do himself with you all or intended to

8    just refer that all to me at this point.

9                But there is no harm in you both meeting and

10   conferring and putting together the schedule because you are

11   going to have to do that in any case.

12               MR. McINTURFF:  Okay.

13               THE COURT:  And I guess what I will -- so when is your

14   current status letter due for me?

15               MR. McINTURFF:  Friday.

16               THE COURT:  Friday.  Okay.  So what I will do is, I

17   know you will be briefing this interim class counsel issue,

18   which will be fully briefed by February 15th.  Your current

19   discovery deadline is in April; is that right, the fact

20   discovery deadline?

21               MR. McLAUGHLIN:  Yeah.  April 18th.

22               THE COURT:  Okay.  So what I will have you do is --

23   how about the end of February, which is February 29th -- jumping

24   the gun since I usually do this once I see your joint status

25   letter, but I will want -- I will want another joint status

1  letter by the end of February giving me an update on discovery.

2  But why don't I hold off on that?  We will see what you guys

3  submit on Friday, and I can determine from there because it may

4  be there will be more issues that we need to address, and so why

5  don't I hold off on that?

6            Are there any other issues that we can address today,

7  Mr. McInturff?

8            MR. McINTURFF:  Not for plaintiffs, Your Honor.

9            THE COURT:  Okay.  Mr. McLaughlin, anything that you

10 want to raise?

11           MR. McLAUGHLIN:  No, Your Honor.  Thank you.

12           THE COURT:  Okay.  So I will not set a joint status

13 letter deadline yet or our next teleconference.  I will await

14 the parties' joint status letter that we will get on Friday and

15 also the parties' briefing on interim class counsel, and then we

16 will take it from there.

17           Thank you all.  Have a good day.

18           MR. McINTURFF:  Thank you, Your Honor.

19           MR. McLAUGHLIN:  Thank you, Your Honor.

20           THE COURT:  Bye-bye.

21                           -o0o-

22

23

24

25