## DECLARATION OF M. FRANCES RYAN

I, M. Frances Ryan, Esq. make this declaration pursuant to 28 U.S.C. § 1746. I hereby state as follows:

1. I am a partner with the law firm of Wusinich, Sweeney & Ryan LLC ("WSR"), counsel for the plaintiffs in the Civil Action *Brian Callery and Tina Fasano v. HOP Energy, LLC*, No. 20-cv-03652 ("*Callery*"), pending before the Hon. Cynthia M. Rufe in the United States District Court for the Eastern District of Pennsylvania.. I am familiar with the facts and circumstances stated herein based on my personal knowledge.

2. I have reviewed the motion papers and affidavits filed by Jonathan Shub and Burkett McInturff in Opposition to Defendant's Motion to Stay and in support of their Motion for an Order to Show Cause and I submit this declaration in order to correct numerous inaccuracies.

3. *Callery* is the first filed case and alleges a class far larger than the *Melville* and *Mullaney* classes, which are subsumed within the *Callery* class. *Callery* has two representative plaintiffs, Brian Callery, who has a Capped Price claim, and Tina Fasano, who has a Variable claim.

4. The class alleged in our complaint includes all Defendant's customers "who entered into contracts with Defendants for the delivery of heating oil to a residence, under terms including a capped pricing program and/or a prevailing retail price for the price of heating oil, and who received delivery of heating oil during the time period commencing six years before" the filing date in 2020, i.e. all customers over the past ten years. This definition subsumes the classes asserted in *Melville* and *Mullaney*.

5. *Mullaney* was filed in August 2023 and thus only represents Variable Price customers from 2017 to the present.

6. Class Representative Tina Fasano and I represent the customers identified in the *Melville* and *Mullaney* class definitions and those customers are treated fairly and equitably in the *Callery* settlement.

7. Ms. Fasano retained us in late December 2022. We did not immediately move to amend the complaint to add her claims because we did not want to engage in motion practice that might delay discovery; however, I advised HOP's counsel on several occasions that I would be amending the complaint to add her claims. Our goal was to pursue discovery aggressively to attempt to bring HOP to the settlement table.

8. Ms. Fasano participated in discovery and mediation in 2023. She provided important evidence in discovery. Her claims were discussed in our mediation memo and all parties were aware that she would be a class representative when we amended our complaint.

9. Callery was filed in Pennsylvania state court and that is why it was initially pled in conformity with the Pennsylvania Rules of Civil Procedure, not the Federal Rules of Civil Procedure. We have filed an amended complaint in conformity with the Federal Rules, which I also advised HOP's counsel on numerous occasions that I would be doing. Discovery and settlement discussions were always conducted on behalf of an opt-out class under Fed. R. Civ. P. 23.

10. We filed a motion to remand to state court after removal because we were not convinced that there was federal jurisdiction, and because the motion allowed us to take early discovery, including obtaining a portion of HOP's customer database and the deposition of HOP's then-CFO. This decision was of tremendous benefit to the class because the admissions

in the CFO deposition helped us frame discovery requests and helped us to establish our case on liability and damages.

11. Callery was not floundering when we engaged with HOP Energy in settlement discussions, or at any time. After obtaining early discovery and the CFO's deposition in connection with our Motion to Remand, we won a near complete victory on Defendant's Motion to Dismiss. We then persuaded Judge Rufe to enter an extremely tight discovery schedule with a deadline for fact discovery of August 20, 2023.

12. In the Spring and Summer of 2023 we pursued discovery aggressively, filing a motion to compel on July 10, 2023. HOP replaced its counsel with Nixon Peabody on August 3, 2023.

13. Our aggressive pursuit of discovery caused HOP Energy to ask for mediation in August 2023. At the time we understood that *Melville* alleged a very tiny class of customers in Connecticut only during a limited time frame. *Mullaney* had only just been filed on August 18, 2023. We invited the counsel from these recently filed cases to participate in the mediation because HOP preferred a universal settlement. It was always understood that HOP could settle *Callery* without Shub and McInturff's involvement.

14. In August 2023 HOP asked all plaintiffs to stay merits discovery and instead pursue voluntary discovery in aid of mediation. HOP's new counsel explained that approximately 20% of HOP's insurance policy had already been used up by prior counsel's defense costs and HOP was in a weak financial position.

15. We decided that it was in the best interest of the class to agree to stay merits discovery so long as HOP would agree to produce, on an expedited basis, three broad categories

of documents and information that would enable us to value the case for settlement, without unnecessarily diminishing the funds available to pay a settlement.

16. Shub and McInturff refused to stay discovery in *Melville* and *Mullaney*. As a result the amount of funds available to pay a settlement has diminished significantly over the past year, very much contrary to the interests of the class.

17. During the Fall of 2023 we obtained extensive discovery from HOP consistent with our proposed Rule 23 class, including customer database data going back to 2014, evidence of customer complaints going back to 2014, and examplars of all of HOP's customer contracts. We retained a forensic accounting firm to calculate the class damages. We took all of this discovery with minimal discovery disputes and thus, with minimal expenditure of defense counsel time.

18. We cooperated with Shub and McInturff in the attempted global mediation before Hon. Diane Welsh (Ret.) in December 2023. At that mediation HOP contended that it did not have the ability to pay much beyond the remaining insurance proceeds.

19. HOP provided audited financial statements which showed its weak financial condition and inability to pay. Nevertheless, Shub and McInturff insisted on pressing for an unreasonable settlement. With Judge Rufe's permission, I will share details regarding their settlement position that make clear they were not acting in the best interests of the class but instead for their benefit.

20. I repeatedly warned Shub and McInturff that their actions were harming the class by causing the insurance proceeds to be wasted on defense costs instead of being available to fund a settlement.

21. I repeatedly warned Shub and McInturff that if they insisted on a settlement demand that HOP could not pay they risked the class members getting nothing because a judgment would drive HOP into bankruptcy. It was evident from HOP's audited financials that HOP's secured debts and and priority pension liabilities far outstripped any assets that could be sold to satisfy a judgment of our class. They did not seem to care.

22. The Court in Callery, Hon. Cynthia Rufe, expressed dismay that the defendant's insurance policy proceeds were being eaten up by defense costs instead of being devoted to fund a settlement. Judge Rufe placed Callery in suspense pending settlement negotiations and strongly encouraged us to reach an agreement that would maximize value for the class.

23. Because Shub and McInturff refused to lower the joint plaintiffs' demand to an area near where HOP could pay, Judge Welsh declared an impasse.

24. In light of the impasse caused by New York counsel, we agreed to retain another mediator to preside over further negotiations, provided that Defendant provided additional, more recent financial information documenting its inability to pay. Hon. James T. Giles (ret.), the former Chief Judge of the United States District Court for the Eastern District of Pennsylvania, agreed to mediate.

25. WSR asked its forensic accountant, Michael Breon of North American Forensic Accounting LLC, to examine Defendant's financial records and ability to pay a judgment or settlement. We requested and received from Defendant the following confidential documents:

- HOP Energy Holdings, Inc. and Subsidiaries Consolidated Financial Statements (audited) Years Ended September 30, 2021, 2022, & 2023
- HOP Energy Holdings, Inc. Consolidated Balance Sheet, Statement of Operations, Statement of Changes in Stockholders' Equity, and Statement of Cash Flows (unaudited) for the seven months ended April 30, 2024
- Credit agreement and Forbearance HOP Energy LLC and ABL OPCO LLC Amended May 14, 2024

26.     Defendant made available for interview by WSR and Mr. Breon its restructuring expert, Michael Buenzow, who is familiar with Defendant's finances.  Defendant has agreed to confirmatory discovery to provide, under oath, testimony confirming the facts counsel and Mr. Buenzow have provided.  Plaintiffs' Counsel and Mr. Breon asked probing questions about Defendant's financial status during this interview and received a detailed explanation of Defendant's condition.

27.     In a mediation on June 6, 2024, presided over by Judge Giles, the parties reached an agreement in principle to settle the matter for, in essence, the remaining insurance policy limits, less a holdback for defense costs which will be added to the Settlement Fund if not expended in defense costs.

28.     Defense counsel  represented to us, subject to confirmatory discovery, that only $2,627,530 million remained of Defendant's insurance policy, and nearly 50% has been spent on defense costs.

29.     Plaintiffs' counsel believes that if this action is not settled promptly, the remaining proceeds of Defendant's insurance policy will be eaten up in defense costs and there will be no assets available to pay a judgment or settlement, given the priorities established in the Bankruptcy Code.

30.     The Callery Settlement Agreement is the result of arms-length negotiations presided over by highly respected and experienced mediators.

31.     Based not only on Mr. Breon's analysis, but on their own judgment, Plaintiffs believe that Defendant could not have withstood a judgment or paid a settlement materially greater than the amount it has agreed to pay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2024.

                                                /s/ *M. Frances Ryan*
                                                M. Frances Ryan