# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MELVILLE,<br>on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>HOP ENERGY, LLC,<br><br>                    Defendant. | Case No.: 21 Civ. 10406 (KMK) (VR) |
| MICHELLE MULLANEY and ROBERT MULLANEY, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>HOP ENERGY, LLC,<br><br>                    Defendant. | Case No.: 23 Civ. 7318 (KMK) (VR) |

**PLAINTIFFS' OBJECTIONS TO JUDGE REZNIK'S SEPTEMBER 18, 2024 ORDER**

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
Daniel J. Brenner (No. 5675198)
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile:  (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com
djb@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub (JS-8128)
Samantha E. Holbrook*
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
CONSHOHOCKEN, PENNSYLVANIA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

*\* Admitted Pro Hac Vice*

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ......................................................................................................................... 6

    I.    YOUR HONOR'S RULING THAT CALLERY DOES NOT SUBSUME
         THIS ACTION IS THE LAW OF THE CASE .................................................... 6

    II.   THE ORDER IMPROPERLY WEIGHED THE *KAPPEL* FACTORS BECAUSE
         IT FAILED TO ADDRESS THE COURTS' OR THE PUBLIC'S INTEREST IN
         COMPLIANCE WITH COURT ORDERS ......................................................... 8

    III.  THE MAGISTRATE JUDGE LACKED AUTHORITY TO DENY THE
         REQUEST FOR INJUNCTIVE RELIEF ........................................................... 10

    IV.  THE ORDER WRONGLY DECLINED TO RULE ON WHETHER HOP
         VIOLATED THE ICC ORDER ..........................................................................11

CONCLUSION .................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Stewart Title Guar.*,
  246 F.R.D. 218 (E.D. Pa. 2007) ............................................................................................. 4

*Assocs. Fin. Servs. Co. v. Mercantile Mortg. Co.*,
  727 F. Supp. 371 (N.D. Ill. 1989) .........................................................................................11

*Bachayeva v. Americare Certified Special Servs., Inc.*,
  No. 12 Civ. 1466 (RRM) (SMG), 2013 WL 4495672 (E.D.N.Y. Aug. 20, 2013) ................ 13

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) .................................................................................................. 14

*Bitzko v. Weltman, Weinberg, & Reis Co.,
  LPA*, No. 17 Civ. 458 (BKS) (DJS), 2018 WL 10593815 (N.D.N.Y. May 18, 2018) ................. 4

*Bromfield v. Bronx Lebanon Special Care Center, Inc.*,
  No. 16 Civ. 10047 (ALC), 2020 WL 495460 (S.D.N.Y. Jan. 30, 2020) ..................................... 6

*Callery v. HOP Energy, LLC*,
  No. 20 Civ. 3652, 2023 WL 2601178 (E.D. Pa. Mar. 22, 2023) .................................................. 3

*Fielding v. Tollaksen*,
  510 F.3d 175 (2d Cir. 2007) .................................................................................................. 6

*ICENY USA, LLC v. M & M's, LLC*,
  421 F. Supp. 3d 204 (D. Md. 2019) ..................................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) .................................................................................................. 5

*Johnson v. Holder*,
  564 F.3d 95 (2d Cir. 2009) ................................................................................................ 7, 8

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
  397 F.3d 77 (2d Cir. 2005) ................................................................................................... 7

*Musacchio v. United States*,
  577 U.S. 237 (2016) ............................................................................................................. 7

*Nat'l Laws. Guild v. Att'y Gen.*,
  94 F.R.D. 600 (S.D.N.Y. 1982) .......................................................................................... 10

*Rankine v. Levi Strauss & Co.*,
  674 F. Supp. 3d 57 (S.D.N.Y. 2023) .................................................................................... 8

*Reynaga v. Cammisa*,
   971 F.2d 414 (9th Cir. 1992).................................................................................................11

*Reynolds v. Beneficial Nat. Bank*,
   288 F.3d 277 (7th Cir. 2002)................................................................................................. 4

*Salahuddin v. Jones*,
   992 F.2d 447 (2d Cir. 1993).................................................................................................. 9

*Salgado v. Student Loan Sols.*,
   No. 20 Civ. 1878, 2020 WL 7123096 (N.D. Ill. Dec. 4, 2020)................................................. 10

*Samad Bros. v. Bokara Rug Co.*,
   No. 09 Civ. 5843 JFK, 2010 WL 5095356 (S.D.N.Y. Dec. 13, 2010)........................................ 8

*Sec. & Exch. Comm'n v. Bronson*,
   No. 12 Civ. 6421 (KMK), 2023 WL 6238818 (S.D.N.Y. Sept. 26, 2023)................................. 13

*United States v. Whitaker*,
   No. 21-595, 2024 WL 1266348 (2d Cir. Mar. 26, 2024) ......................................................... 7

**Statutes**

28 U.S.C. § 636................................................................................................................6, 10, 11

**Rules**

Fed. R. Civ. P. 23.................................................................................................................... 13

Fed. R. Civ. P. 72..............................................................................................................1, 6, 11

Loc. Civ. R. 72 ........................................................................................................................ 1

Pursuant to Federal Rule of Civil Procedure 72(a) and Southern District of New York Local Rule 72.1, Plaintiffs hereby object to Magistrate Judge Victoria Reznik's September 18, 2024 Order, Dkt. No. 162 (the "Order"), and request that this Court: (1) set aside the September 18, 2024 Order, which granted Defendant's motion for a stay, denied Plaintiffs' request for injunctive relief, and declined to rule on Plaintiffs' contempt application; (2) vacate the stay of this litigation; (3) adjudicate in the first instance Plaintiffs' application to hold Defendant in civil contempt; and (4) grant Plaintiffs any other and further relief as the Court deems just and proper.

## INTRODUCTION

The Order fails to prevent Defendant HOP Energy, LLC ("HOP") from defying the Court's express directives issued as part of its management and supervision of this proposed class action. Specifically, after losing its motion to dismiss in March 2023, HOP moved to stay this action, arguing that a separate action, *Callery v. HOP Energy, LLC*, No. 20 Civ. 3652 (E.D. Pa.), subsumed this one. Your Honor rejected that argument, denied HOP's motion to stay, and held that *Callery* and this action differ substantially. Notwithstanding that ruling, HOP started threatening to use a low-ball settlement in *Callery* to release its liability here. To prevent this, the undersigned moved for appointment as interim class counsel. The Court granted that motion, specifically explaining that appointing interim class counsel would protect the proposed classes here from any improper settlement in *Callery*. Undeterred, HOP intentionally violated that order and secretly negotiated a settlement in *Callery* that seeks to resolve the class claims at issue here for $0 out-of-pocket. HOP then moved for a stay, premised on a claim Your Honor already rejected—that *Callery* subsumes this action. Plaintiffs opposed the stay and sought injunctive relief and a finding of civil contempt for HOP's violation of the interim class counsel order. While Judge Reznik's Order expressed dismay at HOP's conduct, it granted HOP's stay, denied Plaintiffs' injunctive relief, and declined to rule on contempt. This was reversible error, and these objections seek to hold HOP accountable

1

for its intentional violation of a Court Order and prevent it from evading this Court's supervision of this important consumer protection litigation.

### FACTUAL BACKGROUND

This action challenges HOP's variable pricing practices with respect to its automatic delivery of home heating oil. Am. Compl., Dkt. No. 31, ¶ 3.[1] HOP, one of the nation's largest and "fastest-growing" home heating oil companies with over 100,000 customers,[2] offers automatic delivery of home heating oil under various pricing models, including variable rate, capped rate, and fixed rate plans. *See id.* ¶ 12. This action consists of two consolidated cases alleging that HOP's variable home heating oil rates breached the pricing term in its form customer contracts: *Melville's* proposed class is comprised of customers who were contractually promised to be charged HOP's "Promotional Prevailing Retail Price for First Year Customers," and *Mullaney's* proposed class contracted for HOP's "Prevailing Retail Price." Consolidation Order, Dkt. No. 128, at 6–7. The amount at issue in this litigation is substantial. Plaintiffs' expert calculates that HOP's breach of its variable rate contracts caused class member overpayments of more than $100 million. *See* Joint Decl. of Jonathan Shub and J. Burkett McInturff, dated Aug. 1, 2024, Dkt. No. 140, ¶ 4 ("August 1 Decl."). Further, this action centers on consumers' home energy needs, which the Court has recognized is a "universally necessary" utility service. Dkt. No. 24 at 22.

While this consolidated action involves HOP's variable-rate customers, in *Callery* HOP is facing a separate proposed class action which centers on HOP's "capped" price product. Your Honor held more than a year ago that *Callery* "is based on the theory that Defendant did not honor its Capped Price promise." May 11, 2023 Order, Dkt. No. 39 ("Stay Denial Order"), at 3.

---

[1] Unless otherwise noted, Dkt. citations refer to *Melville* docket numbers.
[2] https://www.hopenergy.com/about-hop-energy/.

2

*Callery* was initially filed in Pennsylvania state court as a Pennsylvania-only class action. *See* Plaintiffs' Br. in Support of Mot. for Interim Class Counsel, Dkt. No. 99, at 3–4 (citing *Callery* Compl.). After HOP removed the case to federal court, the *Callery* plaintiff spent two years unsuccessfully pursuing a remand to state court, claiming he could not meet the Class Action Fairness Act's $5 million threshold. August 1 Decl. ¶ 7. Due to this dispute, HOP's motion to dismiss *Callery* was decided just five days before Your Honor denied HOP's motion to dismiss here. *Callery v. HOP Energy, LLC*, No. 20 Civ. 3652, 2023 WL 2601178 (E.D. Pa. Mar. 22, 2023).

With the ink barely dry on Your Honor's denial of HOP's motion to dismiss, HOP sought to use *Callery*—which was floundering in Pennsylvania—to extinguish the claims brought here. First, seeking to exploit *Callery*'s weak claims, *see Callery* Compl., Dkt. No. 32-1, HOP moved to stay this action and make *Callery* the lead case, arguing this case "is subsumed within" *Callery*. Dkt. No. 32 at 1. HOP's sole argument was that "the putative class in the *Melville* Action is a subset of the putative class in the *Callery* Action." *Id.* at 2. In response, Plaintiffs made clear that *Callery* is a Pennsylvania fraud action that HOP itself had described as one "aris[ing] out of HOP's capped pricing program" and that the *Callery* court had already determined was about "the capped price program." Dkt. No. 34 at 1 (quoting *Callery*, 2023 WL 2601178, at *1). This Court expressly rejected HOP's overlap claim, emphasizing that *Callery* is about HOP's "Capped Price promise" and concluding that because this case challenges HOP's variable pricing, the two actions "differ substantially." Stay Denial Order at 3.

Notwithstanding this Court's express ruling that *Callery* is about a different product, HOP began threatening to use a low-ball settlement in *Callery* to extinguish its liability here. August 1 Decl. ¶¶ 9–11. This is an established (albeit improper) defense tactic in class action litigation

3

known as a "reverse auction."[3] In response, and to protect the variable rate customers whose claims Plaintiffs have been vigorously pursuing here, the undersigned sought appointment as Interim Class Counsel. Dkt. Nos. 98–100-5.[4]

Judge Reznik agreed and appointed Interim Class Counsel because "it would protect the putative classes in *Melville* and *Mullaney* to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving *Callery*." Interim Class Counsel Order, Dkt. No. 128, at 3 ("ICC Order"). As Judge Reznik later noted, "[t]his Court contemplated that its Interim Class Counsel order would mean that the *Melville* and *Mullaney* plaintiffs would participate in any settlement that attempted to extinguish their claims" and that "the Court assumed that any further settlement negotiations would involve interim class counsel for the *Melville* and *Mullaney* plaintiffs if the settlement attempted to resolve claims on their behalf." Order at 3–4, 14.

Unfazed, HOP clandestinely violated the ICC Order. Specifically, soon after the ICC Order was issued, HOP secretly negotiated a settlement in *Callery* that seeks to extinguish HOP's liability here for ***$0 out-of-pocket*** while paying Callery's lawyers nearly $900,000 for settling all actions. Joint Decl. of Jonathan Shub and J. Burkett McInturff, dated Aug. 30, 2024, Dkt. No. 158, ¶ 18 ("August 30 Decl."); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

---

[3] A "reverse auction" is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

[4] *See Allen v. Stewart Title Guar.*, 246 F.R.D. 218, 219 (E.D. Pa. 2007) (appointing interim counsel will "guard against" the "problems in which the settlement of one case prematurely extinguishes the claims in the other"); *see also Bitzko v. Weltman, Weinberg, & Reis Co., LPA*, No. 17 Civ. 458 (BKS) (DJS), 2018 WL 10593815, at *1 (N.D.N.Y. May 18, 2018) ("Given the significant work that has already been done in this case and the pendency of a potentially overlapping action, [appointing interim class counsel] will provide the parties and their counsel with needed certainty regarding further litigation of this matter.").

827 F.3d 223, 234 (2d Cir. 2016) (where counsel's fee for representing one plaintiff is contingent on "resolv[ing] another group of plaintiffs' claims, a court cannot assume class counsel adequately represented the latter group's interests"). Despite the ICC Order, these collusive dealings were deliberately concealed from Interim Class Counsel. August 30 Decl. ¶¶ 13–18.

After signing the secret *Callery* settlement agreement, Callery's counsel and HOP took two additional collusive steps. First, they amended the *Callery* complaint to plead a nationwide class (not a Pennsylvania-only class) **after** signing their settlement agreement. *See* Br. in Support of Contempt Mot., Dkt. No. 139 ("Contempt Br."), at 4 n.4 (timeline of *Callery* filings). Second, HOP moved to stay this action, repeating its previously rejected claim that *Callery* "encompasses the claims of the Plaintiffs and the putative classes in *Melville* and *Mullaney*." Dkt. No. 135 at 7.

Plaintiffs opposed the stay and asked that the Court hold HOP in civil contempt for violating the ICC Order.[5] Judge Reznik's Order makes clear that she agrees HOP violated the ICC Order: "[I]t does not go unnoticed by the Court that HOP's actions may have violated the spirit of the Court's Interim Class Counsel order, if not its explicit terms." Order at 14. Notwithstanding Judge Reznik's clear disapproval of HOP's tactics, the Order granted HOP's stay and declined to rule on Plaintiffs' contempt application. *Id.* at 14. As set forth below, the Order was driven by four key reversible errors: two errors with respect to the stay motion and two errors with respect to the contempt application.

*First*, the Order did not address Plaintiffs' primary argument against the stay: that this Court already decided *Callery* does not subsume this action. That is the law of the case. Both HOP's latest stay motion and the Order are predicated on the false premise that *Callery* is so similar to

---

[5] The August 1 Declaration (Dkt. No. 140) and August 30 Declaration (Dkt. No. 158) further detail HOP's improper reverse-auction settlement strategy and its collusion with plaintiff's counsel in *Callery*.

5

this action that it can be used to settle it. Yet that issue has already been decided; it was reversible error to grant a stay motion based on HOP's incorrect assertion. **Second**, the Order failed to properly weigh the courts' and the public's interest in litigants complying with court orders. **Third**, as a magistrate judge, Judge Reznick lacked authority to rule on Plaintiffs' request for injunctive relief. *See* 28 U.S.C. § 636(b)(1)(A) (magistrate judges may "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief[.]"). **Fourth**, the Order expressly declined to decide whether HOP violated the ICC Order, instead leaving it to the Eastern District of Pennsylvania to make that determination.

Due to these four errors, this Court should set aside the Order, vacate the stay, and rule on Plaintiffs' contempt application in the first instance.

## ARGUMENT

When a magistrate judge issues a non-dispositive pretrial order, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Bromfield v. Bronx Lebanon Special Care Center, Inc.*, No. 16 Civ. 10047 (ALC), 2020 WL 495460, at *1 (S.D.N.Y. Jan. 30, 2020) (cleaned up). Here, the Order's ruling on HOP's stay motion is clearly erroneous and contrary to law for the following four reasons.

### I. YOUR HONOR'S RULING THAT *CALLERY* DOES NOT SUBSUME THIS ACTION IS THE LAW OF THE CASE

Plaintiffs' primary argument against HOP's latest stay motion was that Your Honor's May 2023 Stay Denial Order ruling that *Callery* does not subsume this action is the law of the case. *See* Br. in Opp. to Stay Mot., Dkt. No. 142, at 4–5. This was the very first argument in Plaintiffs'

6

briefing. *Id.* The Order was clearly erroneous and contrary to law because it never addressed or decided that issue and provided no basis for deviating from the law of this case.

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016); *see also Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (quotation omitted)). Indeed, the law of the case doctrine "forecloses reconsideration of issues that were decided during prior proceedings." *United States v. Whitaker*, No. 21-595, 2024 WL 1266348, at *4 (2d Cir. Mar. 26, 2024). The doctrine remains in force when different judges rule on the same issue in the same case. The Second Circuit has emphasized that in such a scenario, courts should be "understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005) (cleaned up).

HOP's stay motion to Judge Reznik recycled a claim already rejected by Your Honor—that *Callery* "encompasses the claims of the Plaintiffs and the putative classes in *Melville* and *Mullaney*[.]" *See* Dkt. No. 135 at 7. Your Honor expressly rejected this claim, instead finding that the two actions "differ substantially." Stay Denial Order at 3. That conclusion is the law of this case. Yet, the central dispute in HOP's stay motion to Judge Reznik is the same: whether *Callery* subsumes this action. Because it does not, the purported *Callery* settlement cannot be the predicate for a stay.

Not only does the Order fail to acknowledge the law of the case issue, but it also incorrectly states that whether *Callery* subsumes this action is undecided. Specifically, the Order notes that the parties have "disputed whether *Callery* overlapped with *Melville* and *Mullaney*" and that HOP "has a more 'expansive view of *Callery*,' arguing that the cases do overlap[.]" Order at 2–3. However, there is no dispute. Your Honor already decided this issue.

Nevertheless, the Order fails to follow Your Honor's conclusion about *Callery* in the Stay Denial Order. *See id.* And it does so without even acknowledging the law of the case considerations Plaintiffs briefed. The Order provides no "cogent and compelling reasons" for disturbing the law of the case, *see Johnson*, 564 F.3d at 99, nor recognizes that this central issue was previously decided by Your Honor. *Cf. Samad Bros. v. Bokara Rug Co.*, No. 09 Civ. 5843 JFK, 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010) ("[A]pplication of this deferential standard [of review] is somewhat more difficult in this case, as the Magistrate Judge provided no explanation for his ruling."). Therefore, the Order commits clear error and Your Honor should set it aside because the law of the case doctrine precludes HOP's renewed argument that *Callery* subsumes this action.

## II. THE ORDER IMPROPERLY WEIGHED THE *KAPPEL* FACTORS BECAUSE IT FAILED TO ADDRESS THE COURTS' OR THE PUBLIC'S INTEREST IN COMPLIANCE WITH COURT ORDERS

The Order also committed clear error in mis-weighing the *Kappel* factors to determine whether a stay was warranted. "In deciding whether to issue a stay, courts in this Circuit will consider the following factors, often referred to as the *Kappel* factors: 1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; 2) the private interest of and burden on the defendants; 3) the interests of the courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest." Order at 5–6 (citing *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023)).

8

The Order correctly found that the first factor, Plaintiffs' interest, weighed against a stay. Order at 6–7. The Order then found that the remaining factors—HOP's interest, non-parties' interest, the courts' interest, and the public's interest—favored a stay. *Id.* at 7–10. But the Order committed reversible error by overlooking Plaintiffs' argument that for factors 3 and 5, the courts and the public have a strong interest in compliance with court orders, instead finding that preserving judicial resources instead favored a stay.[6] Indeed, granting HOP a stay in furtherance of its overt violation of the ICC Order gives a pass to intentional violations of court orders.

There are at least two reasons why granting HOP a stay on the instant record strongly cuts against the courts' and the public's interest in compliance with court orders. First, although Your Honor already decided this action is not subsumed by *Callery*, HOP's stay request to Judge Reznik is premised on ignoring Your Honor's earlier conclusion about the scope of *Callery* and this case. The courts and public have a strong interest in being able to rely on a court's prior rulings. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (emphasizing "the strong public interest in economizing the use of judicial resources by avoiding relitigation"). Granting HOP a stay here encourages parties to relitigate issues they lost before a different judge.

Second, HOP violated the Court's ICC Order. As Judge Reznik explained, "[t]his Court contemplated that its Interim Class Counsel order would mean that the *Melville* and *Mullaney* plaintiffs would participate in any settlement that attempted to extinguish their claims." Order at 14. As described more fully below, HOP's violation of a court order and its requested stay are

---

[6] The Order noted Plaintiffs' argument regarding this issue in a footnote, stating that granting a stay here would allow Plaintiffs to focus on challenging the *Callery* settlement and would thus somehow advance this Court's interest in compliance with its orders. Order at 10 n.5. Plaintiffs respectfully disagree. Another court should not be charged with protecting this Court's interests as forcefully as the Court itself. Further, if this Court were to hold HOP in contempt, that ruling would shed light on the *Callery* settlement's fairness. *Infra* § IV.

9

tactics in its efforts to settle this important consumer protection action without the *Melville* and *Mullaney* plaintiffs. *Infra* § IV.

Worse, granting HOP's stay encourages it and future litigants to skirt court orders. "There is an overriding public interest in compliance with Court Orders." *Salgado v. Student Loan Sols.*, No. 20 Civ. 1878, 2020 WL 7123096, at *1 (N.D. Ill. Dec. 4, 2020); *see also ICENY USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204, 223 (D. Md. 2019) ("[T]he public has a strong interest in requiring compliance with court orders[.]"); *Nat'l Laws. Guild v. Att'y Gen.*, 94 F.R.D. 600, 615 (S.D.N.Y. 1982) ("The public interest requires . . . that Court orders be obeyed[.]"). Courts' authority is undermined if their orders are not enforced. Thus, both the public and the courts have a particularly strong interest in parties complying with court orders, meaning factors 3 and 5 weigh heavily *against* a stay.

The Order was thus clearly erroneous because it mis-weighed the *Kappel* factors. This error provides an independent reason to set the Order aside.[7]

### III. THE MAGISTRATE JUDGE LACKED AUTHORITY TO DENY THE REQUEST FOR INJUNCTIVE RELIEF

The Order notes that Plaintiff's application for holding HOP in civil contempt contains a request for injunctive relief. Order at 10–11. Magistrate judges do not have authority to "determine" a pretrial matter concerning injunctive relief. *See* 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief . . . ."). Instead, on such issues, a magistrate judge may only issue a report and recommendation. *See* 28 U.S.C. § 636(b)(2)(B); *see also Reynaga v.*

---

[7] Moreover, the Order does not account for the fact that Your Honor already determined that *Callery* does not subsume this action in its *Kappel* analysis. Because Your Honor already decided that issue, the Court's presumption that that issue was still in dispute is incorrect and shifts the analysis heavily against a stay.

10

*Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992) ("Here, the magistrate did not submit proposed findings to the district court: instead, he entered an order that purported to stay [plaintiff's] action. It is clear that, in the absence of the parties' consent on the record to the magistrate's exercise of such powers, that order was beyond his authority. Subsection (1)(A) specifically exempts 'motions for injunctive relief' from the category of pretrial matters upon which a magistrate may enter an order. The Magistrate's imposition of the stay effectively denied [plaintiff's] request for an injunction: it was therefore not authorized under subsection (1)(A)."); *Assocs. Fin. Servs. Co. v. Mercantile Mortg. Co.*, 727 F. Supp. 371, 375 (N.D. Ill. 1989) ("A magistrate cannot determine a motion for injunctive relief but he may conduct a hearing on that motion and issue a report and recommendation[.]"). Further, any such report and recommendation would be reviewed *de novo* rather than under the clear error standard applied to other pretrial orders issued by magistrate judges. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Because Magistrate Judge Reznik lacked the authority to issue a decision on the injunctive relief requested, Plaintiffs brought it to Your Honor.

Given this reversible error, Your Honor should set aside the Order, enter Plaintiffs' proposed order to show cause, and rule on Plaintiffs' contempt application in the first instance.

### IV. THE ORDER WRONGLY DECLINED TO RULE ON WHETHER HOP VIOLATED THE ICC ORDER

Plaintiffs' contempt application contained two requests for relief. First, it requested an injunction under the All-Writs Act. Contempt Br. at 11–14. Second, it requested a finding of contempt with non-injunctive sanctions to coerce compliance with the ICC Order. *Id.* at 14–15. The Order denied the injunction but declined to rule on the issue of contempt and the non-injunctive sanctions. Order at 10–14. As discussed above, Judge Reznik did not have the authority to decline the request for injunctive relief (and as set forth in Plaintiffs' original briefing, Plaintiffs

11

respectfully disagree with the Order's reasoning for denying injunctive relief). Regardless, the Order commits clear error by declining to rule on contempt and the requested non-injunctive sanctions. In other words, the Order got it exactly backwards: Judge Reznik lacked authority to rule on the injunction (but the Order decided that issue), and Judge Reznik should have ruled on the issue of contempt (but the Order did not).

Notwithstanding HOP's clear violation of the ICC Order, the Order declined to rule on the issue of HOP's contempt, instead deferring to the Eastern District of Pennsylvania's evaluation of the *Callery* settlement's fairness. The Order noted that: (1) "the Court assumed that any further settlement negotiations would involve interim class counsel for the *Melville* and *Mullaney* plaintiffs if the settlement attempted to resolve claims on their behalf;" (2) "Plaintiffs have raised potentially valid concerns about how the *Callery* settlement was negotiated without their involvement;" and (3) "HOP's actions may have violated the spirit of the Court's Interim Class Counsel order, if not its explicit terms." Order at 3–4, 11, 14. Nevertheless, the Order declined to determine whether the ICC Order was violated. *Id.* at 14. This is clear error.

Despite Judge Reznik's express disapproval of HOP's conduct, a court in a different district should not be asked to adjudicate HOP's violation of this Court's ICC Order. HOP's contempt stems from a violation of **this Court's** Order, making this Court the appropriate venue for determining contempt. Moreover, it makes little sense to wait until after the Eastern District of Pennsylvania rules on the *Callery* settlement's fairness to adjudicate contempt here. The thrust of Plaintff's contempt application is that HOP negotiated the *Callery* settlement in violation of the ICC Order. Waiting for the *Callery* court gives HOP exactly what it sought when it violated the ICC Order in the first place. If the *Callery* settlement is approved, the remedies for HOP's contempt may have to be backward looking, rather than being designed to coerce compliance with the ICC

12

Order. *See Sec. & Exch. Comm'n v. Bronson*, No. 12 Civ. 6421 (KMK), 2023 WL 6238818, at *4 (S.D.N.Y. Sept. 26, 2023) (explaining remedial purposes of civil contempt). If the *Callery* settlement is not approved, although this litigation will restart, HOP will have successfully delayed this action. *See Bachayeva v. Americare Certified Special Servs., Inc.*, No. 12 Civ. 1466 (RRM) (SMG), 2013 WL 4495672, at *5 (E.D.N.Y. Aug. 20, 2013) ("[W]ith the continued passage of time memories fade, evidence becomes stale, and the effort to identify and include potential class plaintiffs becomes more difficult."). Either way, if the contempt application is not promptly adjudicated, HOP is rewarded for violating the ICC Order. This is not the precedent this Court should set.

The Order incorrectly contends that the appropriate venue to raise concerns about the settlement is the *Callery* court. While it is true that the *Callery* court will have to adjudicate the fairness of the *Callery* settlement, that adjudication will encompass both procedural fairness and adequate representation. Fed. R. Civ. P. 23(e)(2) (court must find that the settlement "was negotiated at arm's length"). Even if the Order is correct that the *Callery* court is the most efficient forum to challenge the settlement, a determination of whether this Court's ICC Order was violated informs that assessment. Indeed, even if the Order declined to rule on which sanctions should be imposed for such violation, it should have at least made a finding of whether HOP violated the ICC Order. The present scenario instead requires the *Callery* court to make such a determination.

Moreover, there is no additional fact finding necessary to make this determination. "A court may hold a party in civil contempt for disobeying a lawful order only if three elements are satisfied: (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *Bronson*, 2023 WL 6238818, at *5. Here, the relevant facts are not in

dispute. HOP admits that it negotiated a settlement in *Callery* that purports to extinguish the claims of this action and that those negotiations did not involve Interim Class Counsel here. *See* Decl. of Matthew T. McLaughlin, Dkt. No. 136, ¶ 6. Indeed, during the July 17, 2024 conference, Judge Reznik explicitly asked HOP if there was any attempt to carve *Melville* and *Mullaney* out of a settlement in *Callery*, to which HOP responded: "No, your Honor, because the *Callery* claimant—I think I've been consistent about this and I think Your Honor noted it—the complaint as alleged—from the original complaint, it subsumed the defined *Melville* [class]. . . . So, no, there was not an attempt to carve it out[.]" July 17, 2024 Tr., Dkt. No. 140-8, at 21:19–22:8. Therefore, the only determination the Court needs to make is whether the ICC Order was violated. In addition to the fact that Your Honor already rejected HOP's claim that *Callery* subsumed *Melville*, HOP's conduct plainly runs afoul of the ICC Order's ruling that "it would protect the putative classes in *Melville* and *Mullaney* to appoint interim class counsel, as it ensures they will be adequately represented in any settlement involving *Callery*." ICC Order at 3.

In sum, the Order correctly rebukes HOP's conduct, but rather than adjudicating HOP's contempt, the Order instead looks to another court for such resolution. That is clear error. Given the Order's unwillingness to rule on HOP's contempt, Your Honor should do so by entering Plaintiffs' proposed order to show cause, or at the very least, direct that Judge Reznik issue a formal decision on whether HOP violated the ICC Order.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court set aside the Order, deny the stay, and enter Plaintiffs' proposed order to show cause.

Dated:  October 2, 2024                    Respectfully submitted,

                                                  **WITTELS MCINTURFF PALIKOVIC**

By:    /s/ J. Burkett McInturff
        J. Burkett McInturff (JM-4564)
        Ethan D. Roman (ER-5569)
        Daniel J. Brenner (No. 5675198)
        305 BROADWAY, 7TH FLOOR
        NEW YORK, NEW YORK 10007
        Telephone: (914) 775-8862
        jbm@wittelslaw.com
        edr@wittelslaw.com
        djb@wittelslaw.com

        **SHUB & JOHNS LLC**
        Jonathan Shub (No. 237708)
        Samantha E. Holbrook*
        FOUR TOWER BRIDGE
        200 BARR HARBOR DRIVE, SUITE 400
        CONSHOHOCKEN, PA 19428
        Telephone: (610) 477-8380
        jshub@shublawyers.com
        sholbrook@shublawyers.com

        *Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

        *Admitted Pro Hac Vice